UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

JOHN T. CORPAC, an individual; on behalf of himself and all others similarly situated,

                Plaintiffs,

vs.

RUBIN & ROTHMAN, LLC., a New York Limited Liability Company; and JOHN AND JANE DOES NUMBERS 1 THROUGH 25,

                Defendants.

---------------------------------------------------------------x

CASE NO.: 2:10-cv-04165-ADS-ETB

**DECLARATION OF WILLIAM F. HORN, ESQ. IN SUPPORT OF THE PARTIES' JOINT MEMORANDUM OF LAW CONCERNING ALLEGATIONS OF CONFLICT OF INTEREST**

I, William F. Horn, of full age, hereby certify as follows:

1. I am an attorney at law of the State of New York and the Bar of this Court. I have been retained to serve as counsel for Plaintiff, John T. Corpac, in this action. As such, I am familiar with all of the facts set forth herein and state them to be true.

2. On June 25, 2012, the Court held a Final Fairness Hearing in this case at which time Mr. Brian L. Bromberg and Mr. Matthew Shedler appeared as attorneys representing an objector to the settlement at issue in that hearing.

3. At that hearing and by Order of the Court [Doc. 36] the parties were granted "an opportunity to submit papers addressing the alleged conflict of interest between Mr. Horn and Mr. Arleo."

**PRELIMINARY STATEMENT**

4. On September 8, 2010, on behalf of my client, I filed a Summons and Complaint in this action alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq*. ("FDCPA"). [Doc. 1]

5. On October 15, 2010, prior to Defendant filing an Answer or other responsive pleading, I filed an Amended Complaint on behalf of my client. [Doc. 4]

6. On November 15, 2010, again prior to Defendant filing an Answer or other responsive pleading, I filed an Amended Complaint on behalf of my client. [Doc. 5]

7. After allowing one month to pass without any contact from the Defendant and without any responsive filing by the Defendant, on December 17, 2010 I filed a Motion for Default. [Doc. 7]

8. Pursuant to Fed. R. Civ. P. 55(a), Plaintiff's Motion for Default was entered by the Clerk of the Court on December 28, 2010. [Doc. 9]

9. Subsequently, I heard from Defendant's counsel, Joseph Latona, Esq., contacted my law office and requested that I stipulate to set aside the default and I agreed to do so provided that Defendant file an answer and not some other form of responsive pleading.

10. On January 8, 2011, a Stipulation was filed with the Court wherein Plaintiff agreed to set aside the default. [Doc. 10]

## FACTS REGARDING THE SETTLEMENT

11. I am not now, nor have I ever been a colleague of, a friend of Joseph Latona, Esq. of Rubin & Rothman, LLC. In fact, I have had only an adversarial relationship with Mr. Latona as I have represented clients who have had FDCPA claims against his law firm, Rubin & Rothman, LLC.

12. I am not now, nor have I ever been a colleague of, a friend Keith Rothman, Esq. of Rubin & Rothman, LLC. In fact, I have had only an adversarial relationship with Mr. Rothman and his law firm as I have represented clients who have had FDCPA claims against his law firm, Rubin & Rothman, LLC.

13. During the months of January and February of 2011, Mr. Latona and I held arms-length settlement discussions.

14. During the months of January and February 2011, Mr. Latona and I held conversations and exchanged emails regarding a Stipulation of Settlement in this matter.

15. At no time during my discussions with Mr. Latona did I communicate with Robert L. Arleo regarding this matter.

16. At no time during my discussions did Mr. Arleo attempt to contact me regarding this matter.

17. At the conclusion of Mr. Latona and my arms-length negotiations over the terms of the class settlement, in the interest of insuring that the public had notice of the class settlement prior to filing a formal motion for class certification seeking preliminary approval of thew class settlement, I filed with the Court a Notice of Settlement on March 1, 2011 (with the Stipulation of Settlement attached). [Doc. 15]

18. The Parties signing the Stipulation of Settlement are Keith Rothman (Defendant), John Corpac (Plaintiff), Joseph Latona (as Defendants' counsel) and me (as Plaintiff's counsel. Nowhere does the name or signature of Robert Arleo appear - it cannot as he was not involved in this settlement.

**MR. BROMBERG AND MR. SCHEDLER'S UNUTENABLE CLAIM OF COLLUSION**

19. As everyone is aware, it is difficult to prove a negative.

20. The negative in this case is that Mr. Arleo and I did not collude in the settlement of this case and only this affidavit, Mr. Arleo's affidavit and Mr. Latona's affidavit will help prove the negative as all of us have sworn that Mr. Arleo had no involvement in settling this

case. Of course, Messrs. Bromberg and Schedler offer no evidence of collusion they just state that it had to have existed.

21.	As I stated in front of Your Honor at the Fairness Hearing on June 25, 2012, and as is abundantly clear from the docket, this case was settled in March of 2011 and Mr. Arleo was brought on to the case by Defendants on December 21, 2011. [Doc. 19]

22.	I settled this case through arms-length discussions with Joseph Latona. The Stipulation of Settlement was filed with this Court in March 2011. Mr. Arleo filed his Notice of Appearance on December 21, 2011. Based upon these facts no one could possibly believe that there was collusion between Mr. Arleo and me or that it would be necessary for me to notify the class and the Court that I have a personal and professional relationship with Mr. Arleo when, after all, he played no role in settling this case.

23.	There are many other attorneys, doctors and business people that I know. By Mr. Bromberg's reasoning, I must have colluded with all of them - after all, none of them had anything to do with settling this case.

24.	Additionally, I direct the Court to the case entitled *Sabrina Chin vs. RCN Corporation*, S.D.N.Y. Case No. 1:08-cv-07349-RJS. In that case, Mr. Bromberg filed an objection on behalf of a client wherein he made substantially the same spurious and inappropriate claims as he has in the instant case. In his September 8, 2010 Memorandum and Order finding the settlement to be fair and reasonable, District Judge Sullivan being well-aware of the soundness of Mr. Bromberg's arguments rejected the claims made by Mr. Bromberg on behalf of his client.

*The Court Should Disregard Objector's Claims*
*Due to the Disingenuous and Self-Serving Statements by Mr. Bromberg*

25. It is clear from the statements made by Mr. Bromberg at the Fairness Hearing and in his June 22, 2012 letter objecting to the settlement, that Mr. Bromberg is attempting to deceive the Court and such behavior calls into question every statement made by him as well as his true motive for filing an objection.

26. Mr. Bromberg claimed that I would not be able to represent the class because I have business dealings with Mr. Arleo [Transcript, page 18, lines 17-23; a courtesy copy of the transcript was to have been sent to the Court by the court reporter]. Again, as Mr. Arleo had no input into the class settlement that was negotiated between me and Joseph Latona, such claim by Mr. Bromberg fails.

27. A thorough reading of the transcript makes clear, and the Court should note, that *not once* did Mr. Bromberg attempt to address the unmistakable, clear and unassailable fact that Mr. Arleo and I had no relationship in settling this case. That fact alone negates in its entirety, the claim of collusion between Mr. Arleo and me.

28. In response to Mr. Arleo's advisement that this case caused a strain between him and me to the point where Mr. Arleo felt compelled to withdraw as counsel from our cases, Mr. Bromberg intentionally mischaracterized what was said by Mr. Arleo. [Transcript, page 19, lines 3-6]. At no time did Mr. Arleo state or imply that he was withdrawing from cases in retaliation for me standing my ground.

29. Mr. Bromberg also states that I never disclosed my relationship with Mr. Arleo [Transcript, page 19, lines 11-14]. If there were no communication with or participation by Robert Arleo in negotiating the Stipulation of Settlement, why would it be necessary to disclose my relationship with Mr. Arleo. By doing so, I would be lying to the Court and to the Class in that I would be implying that Mr. Arleo participated in the settlement when he did not.

30. At the Fairness Hearing, Mr. Bromberg continued with his misleading statements to the Court by implying that the fact that none of the Defendant's financials were filed is somehow improper. [Transcript, page 23, lines 20-25]. Via his statement, one would think that Mr. Bromberg finds the inclusion of Defendant's financials to be an integral part of a settlement agreement.

31. Once again his deceitfulness shines through as he himself files class settlement agreements and does not include financials of the defendant. Indeed, the inclusion of financial statements would violate the Defendant's privacy rights. Had I filed the Defendant's financial statements, I could have been liable to the Defendant for a privacy violation. So, once again, Mr. Bromberg sets forth disingenuous and nonsensical claims.

32. Mr. Bromberg continues in his attempts to deceive the Court as he claims that class members are receiving nothing but, rather, the statutory damage award is going solely to a *cy pres* recipient. Again, Mr. Bromberg pretends to have a serious concern over this issue. [Transcript, page 24, lines 1-3]

33. In reply, I point to a case Mr. Bromberg settled in 2008. Judge Block gave his approval to the settlement in *Eckhaus, et al vs. Nature' Pillows, et al*, E.D.N.Y. 1:06-cv-00985-FB-KAM (2008) In *Eckhaus*, Mr. Bromberg provided notice to the class via publication and the class members did not receive any award, whether individual or *cy pres*. Further, Mr. Bromberg and his co-counsels were awarded $298,000 while the class, again, received *nothing*.

34. In his June 22, 2012 letter to the Court [Doc 27], Mr. Bromberg complains that I may receive up to $75,000 which is a whopping 8 times the amount that the class is receiving. Again, his self-serving behavior shines through. As stated above, Mr. Bromberg settled the *Eckhaus* case for *zero* class damages but hauled in an unbelievable $298,000 in legal fees. Again,

I bring up the issue of his unclean hands when he is put in the same position of settling a case. I question his concern about 9th Circuit's opinion in *In Re Bluetooth Headset Products*, 654 F. 3$^d$ 935 (9th Cir., 2011) which Mr. Bromberg cited to Your Honor at the June 25, 2012 fairness hearing. [Transcript, pages 24-26]

35.     In the *In Re Bluetooth* Opinion, Senior Circuit Judge Hawkins indicated that the Court found that the then-current record did not dispel the possibility that class counsel may have bargained away class benefits in favor of collecting attorney fees (*In Re Bluetooth* at 938).

36.     Mr. Bromberg attempts to fool the Court into believing that the settlement I negotiated is unfair by providing the Court with a case that, first of all is not from this Circuit, second is a products liability case *not* an FDCPA case (and is therefore subject to a very different award mechanism) and third, the Court's findings would not apply to an FDCPA case

37.     Unlike a products liability case, in an FDCPA case that is settled on a class basis, there is a statutory award provided by the FDCPA, *see,* 15 U.S.C. 1692k(a). The FDCPA provides that the class should receive a maximum of 1% of the Defendant's net worth or $500,000, whichever is less. In the arms-length negotiations and settlement in this case the class received 1% of the Defendant's net worth so, as usual, Mr. Bromberg's argument flies in the face of common sense.

38.     The Court in *In Re Bluetooth* was concerned with possible enrichment of the attorneys at the expense of the class. Here, I obtained on behalf of the class, the *maximum* award available under the FDCPA.  So, I challenge Mr. Bromberg to explain to this Court how I enriched myself while doing some imagined injustice to the class.

39.     Further, it is important to note that the award of attorney fees in FDCPA cases was determined by Congress to act as punitive damages against the Defendant.

40. The FDCPA is a fee-shifting statute. In other words, the Plaintiff is not responsible for attorney fees, rather the party responsible for such fees is the Defendant. Therefore, while the class is able to obtain a statutorily limited amount of damages (1% of Defendant's net worth or $500,000, whichever is less) the Defendant is punished further by being required to pay attorney fees.

41. Mr. Bromberg again attempts to deceive the Court by claiming that notice is routinely sent out to consumers when there may be 300,000 of them. While, it may have happened, it is hardly as Mr. Bromberg would have Your Honor believe, routine. The cost would be prohibitive and most if not all debt collectors would balk at such expense and would, instead, seek the Court's approval to publish notice - similar to the publication that was done here.

42. Again, continuing to "muddy the waters" Mr. Bromberg, who previously in his argument had a problem with my receiving up to $75,000 then argues that if I do not receive the $75,000 (that he is attempting to prevent me from receiving) then the Defendant is receiving a windfall.

43. Mr. Bromberg's deceit continues when he presents his counterargument to Mr. Arleo's statement regarding another case where Mr. Bromberg objected to the settlement.

44. Mr. Arleo described to Your Honor a case that he and I worked on and settled, *Gravina et al vs. National Enterprise Systems, Inc, et al*, E.D.N.Y. Case No. 09-cv-2942-JFB-GRB. Mr. Arleo explained that in the middle of our settlement, Mr. Bromberg and his co-counsel intervened in order, we believed, to force the Defendant to pay them attorney fees. I believe that the Defendant was concerned that Mr. Bromberg would delay our reasonable settlement and stymie their ability to move on to conduct business and, agreed to settle separately the Florida cases.

45. In response, Mr. Bromberg incorrectly informed the Court that his two micro class cases were filed prior to the *Gravina* case. [Transcript, page 25, lines 11-14] Interestingly, both of Mr. Bromberg's cases were filed in Florida in 2010 one full year after the filing of the *Gravina* case. As usual, Mr. Bromberg wastes the Court's time and resources by providing incorrect information to the Court in an attempt to build up the reasons why Your Honor should not find the settlement in this case fair and reasonable.

46. Further, Mr. Bromberg's laudable hope for a class action damage award is that the money get into the hands of the consumers, not a not-for-profit. [Transcript at page 25, lines 22-23] To do so in many cases, this case included, would mean that the individual consumer would receive only pennies (as in this case) and, in order to notify each class member and then to send out checks for pennies, a debt collector would be put out of business. The goal of the FDCPA is to protect consumers, not to bankrupt companies as Mr. Bromberg hopes to do.

47. Ultimately, I hope that Your Honor will consider the source of the unwarranted and unfounded accusations regarding collusion. As is clear, Mr. Bromberg has stayed as far away as he can from actual facts in his argument. He utilizes nothing more than a vague notion of collusion, despite Mr. Arleo not working in the settlement. He has obfuscated the facts with disingenuous statements. As he has put forth so many disingenuous statements, I hope that the Court will see this "objection" for what it really is - a way for Mr. Bromberg to interfere with a settlement in order to line his pockets.

*This As an Attempt by Messrs. Bromberg and Schedler*
*to Correct Their Failure to Do Due Diligence*

48. Mr. Bromberg spent a significant amount of time complaining about his client not receiving individual notice which, I presume, would have led his client to opt-out of the class settlement to retain his individual rights to sue Rubin & Rothman.

49. An important issue for the Court to consider is why Messrs., Bromberg and Schedler were not protecting their client's interests by monitoring litigation activity as it related to Defendant, Rubin & Rothman.

50. Mr. Bromberg was very quick to intervene in my class case *Gravina*, *supra*. He did so prior to any preliminary approval by, I believe, reviewing the ECF docket. Clearly he is capable of doing due diligence. His failure and the failure of his co-counsel to do so in this case should be seen by the Court as an attempt to protect themselves against a potential malpractice claim by Mr. Sejour (the Objector).

51. Rather than face his mistake, he and his co-counsel cast spurious claims against me and Mr. Arleo while simultaneously wasting the Court's time.

52. I ask that the Court recognize this "Objection" for what it is - an attempt to protect Objector's counsel from malpractice claims and an attempt to line Mr. Bromberg's pockets at the expense of my and Mr. Arleo's reputations.

53. I have been practicing law for 17 years and have practiced law at both Simpson, Thacher & Bartlett and Skadden, Arps, Slate, Meagher & Flom. I have had a solid reputation at those firms and have had a solid reputation during the years I had my own law practice or practiced with a partner.

54. This is now the second time my reputation has been smeared by Mr. Bromberg and, as I stated above, I hope the Court will see all the disingenuous comments for what they are

and tell Mr. Bromberg to cease acting in a manner that is disruptive, wasteful and that unfairly and incorrectly paints other attorneys in a negative light.

55. Finally, when taken together, all of the above clearly indicates that there was no collusion and that Messrs. Bromberg and Schedler's attempts, via disingenuous, incorrect and obfuscating statements to paint my relationship with Robert Arleo as collusive is misplaced and wasteful. In providing such mistaken, misplaced and disingenuous statement, Mr. Bromberg brings into question the veracity of *everything* he has stated.

*In accordance with 28 U.S.C. §1746, I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 23rd day of July, 2012, at Fresh Meadows, New York.*

*s/ William F. Horn*
William F. Horn, Esq. (WH-1070)
LAW OFFICE OF WILLIAM F. HORN
188-01B 71st Crescent
Fresh Meadows, NY 11365
Telephone: (718) 785-0543
Facsimile: (866) 596-9003
E-Mail: bill@wfhlegal.com

*Attorney for Plaintiff, John T. Corpac, and all others similarly situated*