UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN T. CORPAC, an individual; on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> RUBIN & ROTHMAN, LLC, a New York Limited Liability Company; and JOHN AND JANE DOES NUMBERS 1 THROUGH 25, <br><br> Defendants. | No. 10-CV-4165 (ADS)(ETB) |

Declaration of Objector's Attorney Brian L. Bromberg in
Opposition to Referring Mr. Bromberg and His Co-counsel, Matthew Schedler
To the Chief Judge for Disciplinary Proceedings, and in
Support of Referring William F. Horn to
The Chief Judge for Disciplinary Proceedings

Under 28 U.S.C. § 1746, I, Brian L. Bromberg, do hereby declare under penalty of perjury, that the following is true and correct:

1. I am a principal of the Bromberg Law Office, P.C.

2. I am submitting this declaration in opposition to the request of the Court that I show cause why my co-counsel, Matthew Schedler, and I should not be referred to the Chief Judge for disciplinary proceedings.

3. I am also submitting this declaration in support of referring William F. Horn to the Chief Judge for disciplinary proceedings.

4. In his letter to the Court dated June 29, 2012 (ECF# 33), Mr. Horn states, in relevant part, as follows:

1

> Nor has Mr. Sejour disclosed to the Court the improper financial motives of his counsel – namely, that Mr. Bromberg has an improper financial arrangement of kicking back money to an attorney (Matthew Shedler [sic]) and his non-profit employer (CAMBA Legal Services, Inc.).

5. These allegations are false.

6. I know Mr. Schedler because we are both active members of the National Association of Consumer Advocates, a not-for-profit organization based in Washington, D.C.

7. We both frequently attend conferences sponsored by the National Consumer Law Center, the very organization to which the parties wish to direct the payment of a $9,400 *cy pres* award in lieu of providing any relief to the class members.

8. In addition, Mr. Schedler and I served on the Civil Courts Committee of the Association of the Bar of the City of New York at the same time.

9. I learned of the parties' settlement on or about Wednesday, June 20, 2012.

10. I discussed the settlement with Mr. Schedler on Thursday, June 21, 2012, and he contacted his client the following morning.

11. On the morning of Friday, June 22, 2012, Mr. Sejour appeared at CAMBA, spoke with Mr. Schedler in person and retained our offices to object to the settlement.

12. That day, Mr. Schedler and I prepared Mr. Sejour's emergency letter-motion objecting to the settlement, dated June 22, 2012, and I e-filed it at approximately 7:09 p.m.

13. At no time have any kickbacks been paid, promised or agreed to.

14. In the unlikely event any attorney fees are awarded to Mr. Sejour, they will be divided *pro rata* between my office and CAMBA based on the work that each of our respective offices perform.

15. I say "[i]n the unlikely event any attorney fees are awarded" because we believe that the settlement cannot be salvaged.

16. In other words, there is no justifiable basis for Mr. Horn remaining as class counsel when he is facing with an irremediable conflict of interest that makes him inadequate class counsel, and there is no good-faith basis for wiping out the claims of more than 300,000 consumers without any individualized notice or tangible benefit of any sort.

17. Lest the Court believe that I am overstating Rubin & Rothman's liability for failing to conduct a meaningful attorney review of consumers' files before sending collection letters and filing lawsuits, I am attaching, as <u>Exhibit A</u>, a copy of a recent decision in a case in the City Court of Mount Vernon in which the Court imposed a sanction of $10,000 against Rubin & Rothman for failing to review a consumer's file before filing suit.

18. In sum, there is no basis for referring me or Mr. Schedler to the Chief Judge, because no kickback scheme exists and Mr. Horn's allegations were made without any basis in fact.

Dated: New York, New York
July 27, 2012

/s/ Brian L. Bromberg
Brian L. Bromberg

# Exhibit A

LAW.COM    Welcome to the Law.com network. Click here to register and get started.    Sign Out | My Account





   Enter Keywords   This Website   Search

| Home | News | Decisions | Columns | Practice Areas | My NYLJ | Careers | Courts | Verdicts | Public Notices |

Home > Decisions > LVNV Funding LLC, Plaintiff v. Annetta Guest, Defendant, 2091-10

**Decision**    Font Size:

# LVNV Funding LLC, Plaintiff v. Annetta Guest, Defendant, 2091-10

City Court of Mount Vernon, Westchester County

New York Law Journal    July 5, 2012

Print    Share    Email    Reprints & Permissions    Write to the Editor

Cite as: LVNV Funding LLC v. Guest, 2091-10, NYLJ 1202561610582, at *1 (City., WE, Decided May 29, 2012)

Judge Mark A. Gross

Decided: May 29, 2012

**ATTORNEYS**

Rubin & Rothman, LLC, Islandia, NY.

Counsel for Midland Funding LLC & Rubin & Rothman, LLC: Pillsbury Winthrop Shaw Pittman, LLP, New York, NY.

Defendant Pro Se: Annetta Guest, Mount Vernon, NY.

The Lawyers' Fund For Client Protection, Albany, NY.

Ex-Debevoise Associate Who Kept Sex Slave Is Suspended

'Public' Tweets Are Subject to D.A.'s Subpoena, Judge Says

Court Again Faults Search of Youth That Revealed Gun

Retired Attorney Finds 'New Niche'

Dakota Directors Can Be Held Liable for Bias, Panel Finds

Advertisement



*1

This Court ordered a hearing to determine whether sanctions should be imposed on plaintiff and its attorneys for filing a frivolous debt collection lawsuit and whether plaintiff's counsel should be held in contempt of the Court for failing to provide court ordered documents.

Plaintiff commenced the instant action on June 8, 2010. Defendant filed her answer on July 23, 2010. The matter was scheduled for a Pre-Trial Conference to be held on September 28, 2010. On September 28, 2010 both sides appeared and the plaintiff was ordered to serve on defendant and file with the Court its proof of the entire chain of assignments of the alleged debt, the credit card agreement and other documentary proof of plaintiff's prima facie

LAW.COM    Welcome to the Law.com network. Click here to register and get started.    Sign Out | My Account

case by October 29, 2010. The Pre-Trial Conference was adjourned to November 16, 2010. On November 16, 2010 both sides again appeared, however, plaintiff still had not provided the ordered documents to defendant nor filed them with the Court. Plaintiff's counsel requested an adjournment until January 18, 2011 so that they could obtain the documentary proof the Court had ordered it to provide by October 29, 2010. The Court informed plaintiff's counsel on the record that it would not tolerate any additional delay in plaintiff's counsel producing the required documentary proof. On January 18, 2011 plaintiff's counsel appeared and still did not have the documentary proof and requested to discontinue the case. The Court refused to accept plaintiff's request to discontinue the action, dismissed the case with prejudice and adjourned the case to February 24, 2011 for a hearing to determine whether plaintiff's attorneys should be held in contempt of the Court for failing to provide the requisite documents as directed and whether sanctions should be imposed on plaintiff and its attorneys under 22 NYCRR §130-1.1 for their frivolous conduct in commencing a lawsuit without having the requisite proof needed for a prima facie case.

The hearing was held on February 24, 2011. With respect to the issue of whether sanctions should be imposed on plaintiff and its attorneys for filing a frivolous debt collection lawsuit, plaintiff's counsel contended that plaintiff had a valid case against Ms. Annetta Guest, the defendant herein. In support of their contention that plaintiff had commenced a valid action against Ms. Guest, plaintiff's counsel produced a copy of a statement by Leonard Turnbull, a Senior Sales Specialist at GE Money Bank, which is entitled an Affidavit of Sale and which is dated February 11, 2011 and allegedly sworn to before a notary public in the State of Georgia. In his statement, Mr. Turnbull swears that GE Money Bank sold Ms. Guest's account, account number 6018595219157951, to SHERMAN ORIGINATOR, LLC. Mr. Turnbull further swears that the correct amount owed by Ms. Guest as of the February 14, 2009 date of sale was $1,781.54. Plaintiff's counsel also presented an undated Bill of Sale which references a Forward Flow Receivables Purchase Agreement dated December 19, 2007 between GE Money Bank and SHERMAN ORIGINATOR III, LLC. The Bill of Sale indicates that GE Money Bank sold and assigned certain receivables as set forth in certain files delivered by GE Money Bank to SHERMAN ORIGINATOR III, LLC on February 14, 2009. Also presented to the Court was an undated document entitled Declaration of Account Transfer which indicates that on February 27, 2009 SHERMAN ORIGINATOR III, LLC sold and assigned certain receivables identified on a receivable file dated February 17, 2009 to SHERMAN ORIGINATOR, LLC. The

*3

document further states that SHERMAN ORIGINATOR, LLC subsequently sold the same assets to LVNV Funding, LLC. Attached to the Declaration of Account Transfer as Exhibit A, is an untitled document which indicates that the receivable files dated February 27, 2009 were designated as part of transfer group number 114723 and portfolio number 12639. A copy of a statement from Ms. Nikki Foster, an untitled, allegedly authorized representative of Sherman Originator LLC, dated February 10, 2011, was also produced by plaintiff's counsel and allegedly sworn to before a notary public in the State of South Carolina. Ms. Foster swears in her statement that account number 6018595219157951 is owned by LVNV Funding, LLC and that the account was acquired by LVNV Funding, LLC from its affiliate Sherman Originator, LLC.

Plaintiff's counsel also provided a copy of the computer screen printout that contains the

LAW.COM    Welcome to the Law.com network. Click here to register and get started.    Sign Out | My Account

hearing. Mr. Torres is an employee of Resurgent Capital Services, LP, the servicing agent for Sherman Originator, LLC, Sherman Originator III, LLC and LVNV Funding, LLC. Also produced at the hearing was a copy of the Resurgent Placement Print that Resurgent Capital Services, LP allegedly sent to plaintiff's counsel and which purports to contain data concerning defendant's alleged credit card account, which plaintiff's counsel allegedly used as their basis for commencing the instant action. Ms. Valerie Watts, an associate attorney of plaintiff's counsel, testified regarding the Placement Print at the hearing. Mr. Adam Acuff, an associate attorney employed by plaintiff's counsel who signed the complaint in the instant action, also testified at the hearing.

It is plaintiff's counsel's contention that they did not file a frivolous lawsuit against the defendant. Counsel contends that defendant has admitted that she filled out a credit card application and that based upon the testimony of Mr. Torres, the exhibits introduced at the hearing and the purchase agreement submitted with counsel's post-hearing memorandum, it is evident that LVNV Funding, LLC owned defendant's account. Counsel further contends that based upon the testimony of Ms. Watts and Mr. Acuff and the documents produced at the hearing, it is clear that plaintiff's counsel had good reason to believe, based upon reasonable inquiry, that the claims against defendant were meritorious. Specifically, plaintiff's counsel asserts that it reviewed the Resurgent Placement Print and conducted its own investigation to determine that the account information provided by Resurgent was accurate. It is plaintiff's counsel's position that they have no legal obligation to independently

*4

verify the information regarding defendant's account that they received. Further, counsel contends that there is no rule that requires debt collectors or their attorneys to submit affidavits evidencing the chain of title regarding ownership before commencing an action. Lastly, counsel asserts that neither the Fair Debt Collection Act nor 22 NYCRR §130-1.1-a requires that parties and/or attorneys have all the evidence necessary to prove the claim when filing the complaint.

First, the Court notes that defendant's credit card account at issue herein originated with Monogram Credit Card Bank of Georgia. Plaintiff's counsel entirely failed to establish the relationship between the original creditor Monogram Credit Card Bank of Georgia and GE Money Bank. Plaintiff's counsel was only able to posit at the hearing that they are related entities and produced a copy of a Certificate of Merger regarding the merger of GE Capital Consumer Card Co. and Monogram Credit Card Bank of Georgia with its post-hearing memorandum. However, there has been no explanation or documentation offered regarding either the assignment of defendant's account by Monogram Credit Card Bank of Georgia to GE Capital Consumer Card Co. or the relationship between GE Capital Consumer Card Co. and GE Money Bank. Accordingly, the sworn statement of Mr. Turnbull that GE Money Bank owned the debt and subsequently sold it to Sherman Originator, LLC is entirely unsubstantiated hearsay and of no probative value.

The Court also notes that the documents presented by plaintiff's counsel are contradictory regarding the chain of assignment of the alleged debt. Mr. Turnbull's sworn statement indicates that the alleged debt was sold by GE Money Bank to Sherman Originator, LLC yet the Bill of Sale produced indicates that the batch of accounts set forth in the Notification files of February 14, 2009, in which defendant's account was allegedly included, were sold and assigned to Sherman Originator III, LLC and not Sherman Originator, LLC.[1]

LAW.COM    Welcome to the Law.com network. Click here to register and get started.    Sign Out | My Account

Resurgent Capitol Services, LP, the servicing agent for plaintiff, acknowledged that he had no personal knowledge of the assignment of the alleged debt between any of the parties. Rather, Mr. Torres' testimony relied solely upon the documents that were provided after the assignment took place. Mr. Torres' testimony regarding the electronically transferred documents highlights the fact that there is no evidentiary proof that defendant's account was actually

*5

assigned by or to any party. According to Mr. Torres' testimony, his understanding of the assignments is that numerous accounts are transferred pursuant to a Bill of Sale. After a Bill of Sale is executed, the account information is transferred electronically. Exhibit A references transfer and portfolio numbers for the accounts that were allegedly transferred as part of the agreement. Apparently, portfolio number 12639 refers to a specific batch of accounts. The computer screen printout is a physical representation of the information that was transferred. However, there is absolutely nothing in the documentation to indicate that Ms. Guest's account was among the batch of accounts transferred pursuant to the agreements. Nothing in Mr. Torres' testimony establishes the chain of assignment of defendant's alleged debt.

The Court notes that the Turnbull and Foster affidavits were both created on February 11, 2011, long after the litigation was commenced, specifically to bolster plaintiff's counsel's position at this sanctions and contempt hearing. Neither of such affidavits would be admissible in evidence as only photocopies were ever submitted and neither was accompanied by a certificate of conformity verifying the authenticity of the notaries who have acknowledged execution of such affidavits. Further, Mr. Turnbull's and Ms. Foster's "affidavits" that defendant's account was assigned from GE Money Bank to Sherman Originator, LLC and from Sherman Originator, LLC to LVNV Funding, LLC, respectively, are hearsay and are not sufficient as a matter of law to prove that such assignments did, in fact, take place. See, Palisades Collection, LLC v. Gonzalez, 10 Misc 3d 1058A (Civ. Ct. NYC 2005); Citibank v. Martin, 11 Misc 3d 219 (Civ. Ct. NYC 2005). As such, there is no admissible proof specifically establishing that defendant's credit card account was one of the accounts assigned. Plaintiff's counsel was unable to present admissible or any other evidence of the entire chain of assignment of the underlying debt in this matter and therefore, plaintiff's counsel could not show a prima facie case against defendant.

The testimony of Ms. Watts and Mr. Acuff demonstrates that plaintiff's counsel relied solely on the Placement Print sent over from Resurgent Capital when commencing the instant action. Although plaintiff's counsel contends that they conducted their own investigation, the record is devoid of any testimony delineating exactly what other investigation was conducted.[2] Rather, the testimony clearly establishes that it was only the placement sheet that was relied upon.

The Court finds that under the circumstances presented here, plaintiff's counsel did not

*6

and could not have properly certified the complaint they filed in the instant action. 22 NYCRR §130-1.1-a requires that "by signing a paper, an attorney or party certifies that, to the best of that person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, (1) the presentation of the paper or the contentions therein are not frivolous as defined in subsection 130-1.1(c)." 22 NYCRR §130-1.1(c)

LAW.COM    Welcome to the Law.com network. Click here to register and get started.    Sign Out | My Account

it asserts material factual statements that are false."

Under 22 NYCRR §130-1.1-a a proper certification of a complaint can only be made after an inquiry reasonable under the circumstances establishes that the claim asserted in the complaint has merit in law and asserts truthful factual allegations. The Court takes judicial notice of the fact that over the past five years alone plaintiff's counsel has commenced well over five hundred consumer debt actions on behalf of assignee plaintiffs in this Court alone. In many of those prior actions after the Court directed that plaintiff provide proof of a prima facie case, including proof of the chain of assignment(s) of the debt claimed, the actions were either dismissed by the Court for plaintiff's inability to produce said proof or discontinued by the plaintiff. Clearly, plaintiff's counsel knew what documentary proof was required for a meritorious lawsuit and knew that they did not have the required proof in the instant case when they filed suit. Further, even though plaintiff's counsel well knew that it was routinely filing actions on behalf of assignee creditors when it could not prove a prima facie case, such attorneys continued to do so. In order for any inquiry by counsel into the merits of the instant matter to be reasonable, particularly under these circumstances, counsel had an obligation to obtain the required documentation substantiating a prima facie case, including proof of the entire chain of assignment(s) of the alleged debt, or, at least, certification from an identified individual(s) with personal knowledge of all elements of the case, prior to filing the instant action. As such, since plaintiff's counsel failed to obtain either the requisite documentation or other first party certification substantiating the merits of plaintiff's alleged cause of action against the defendant, plaintiff's counsel could not certify the complaint as required under 22 NYCRR §130-1.1-a. Accordingly, the certification here is disingenuous, misleading and false.

In addition, counsel has a continuing duty to assess the legal and factual basis of a claim in order to avoid the imposition of sanctions under Part 130 of the Rules of the Chief

*7

Administrator of the Courts. See Worldwide Asset Purchasing, L.L.C. v. Akrofi, 884 N.Y.S.2d 631 (Ithaca City Ct. 2009). In the case at bar, counsel was presented with multiple opportunities to re-evaluate the claim especially in light of the fact that it was ordered by the Court to produce documentary proof of the alleged claim, including the entire chain of assignment of the debt, since the matter first appeared on the Court's calendar. Only after being threatened with possible financial sanctions and with being held in contempt of court did plaintiff's counsel obtain even some of the court ordered documents. Even now, the chain of assignment has not been produced. The Court finds that plaintiff's counsel's failure to produce the directed documentary proof is even more egregious given plaintiff's assertion at the very outset of hearing in February 2011 that the judgment herein was valid (despite plaintiff's prior request to discontinue the action) and further given the fact that the hearing was adjourned to allow counsel additional time to submit documentary proof of its case, production of which would otherwise be required in the ordinary course of pre-trial discovery. The apparent lack of a factual basis for the claim renders plaintiff's counsel's conduct in commencing this action without having proof of its merit frivolous within the meaning of 22 NYCRR §130-1.1(c).

Moreover, the Court takes issue with plaintiff's counsel's contentions that they have no obligation to independently verify the information regarding the defendant's account

LVNV Funding LLC, Plaintiff v. Annetta Guest, Defendant, 2091-10     http://www.newyorklawjournal.com/CaseDecisionNY.jsp?id=12025616...

Case 2:10-cv-04165-ADS-ETB   Document 40   Filed 07/27/12   Page 11 of 14 PageID #: 309

LAW.COM    Welcome to the Law.com network. Click here to register and get started.    Sign Out | My Account

chain of assignment in addition to documentary proof of the contract and debt is required in order to prove a prima facie case in a consumer debt action where the plaintiff is an assignee of the original creditor. See, Citibank v. Martin, 11 Misc 3d 219 (Civ. Ct. NYC 2005); Palisades Collection, LLC v. Gonzalez, 10 Misc 3d 1058A (Civ. Ct. NYC 2005); DNS Equity Group, Inc. Lavalle, 26 Misc 3d 1228A (Dist. Ct. Nassau Cty. 2010). Without proof of the chain of assignment, or alternatively, verification from an individual with personal knowledge thereof (and of the other elements of the case) plaintiff's counsel knows it is and will be unable to show its standing to sue the defendant and a lack of standing renders a litigation a nullity, subject to dismissal without prejudice. Citibank v. Martin, 11 Misc 3d 219 (Civ. Ct. NYC 2005). The sentiment behind counsel's assertions renders meaningless the intent behind both the certification requirement under 22 NYCRR §130-1.1-a and the affidavit of merit requirement under CPLR §3020.

The Court further notes that consumer debt actions are not akin to negligence actions

*8

where extensive discovery may need to be had before a plaintiff can prove a prima facie case. Rather, consumer debt actions are primarily document driven and thus, in general, a plaintiff should be able to establish a prima facie case without any discovery whatsoever. In the instant matter, plaintiff's counsel commenced an action without having sufficient documentary proof to establish its prima facie case and did so, this Court believes, in bad faith, fully knowing what proof was required to prove a case, that it was not in possession of such proof, and, most significantly, that, in all likelihood, it could never obtain and produce the requisite proof. The conduct of plaintiff's counsel not only improperly denied defendant the due process of law but is egregious, dishonest and unprofessional and holds the courts and the entire legal profession up for public scorn and ridicule. Such conduct shall not be countenanced by the Court.

With respect to the issue regarding whether plaintiff's counsel should be held in contempt for failing to provide court ordered documents, Ms. Watts testified about the attempts made by counsel to obtain the requisite documents as such efforts were recorded in the firm's computer notes, which were produced at the hearing as an exhibit. Ms. Watts testified that the firm's computer notes indicated that plaintiff's counsel's office requested certain limited documents from plaintiff's predecessors in interest, that being an affidavit of merit, billing statements and a bill of sale, shortly after the defendant's answer was received.[3] Ms. Watts further testified that the only document received by plaintiff's counsel before the January 18, 2011 court date was an affidavit of assignment from Sherman Originator III, LLC to LVNV Funding, LLC. A review of Ms. Watts testimony clearly indicates that plaintiff's counsel had not even attempted to obtain the chain of assignment, original credit agreement, any modification of the credit agreement and an affidavit of merit from an individual employed by the original creditor who has personal knowledge regarding the creditor's record maintenance, all of which were required prior to the January 18, 2011 appearance date.Although plaintiff's counsel contends that good faith efforts were undertaken to comply with the Court's directive that plaintiff serve on defendant and file with the Court its proof of the entire chain of assignments, the credit card agreement and plaintiff's prima facie case, the testimony adduced at the hearing coupled with the attorney computer notes entered into evidence make it clear that plaintiff's counsel made a minimal attempt at best to comply with the Court's order. Plaintiff's counsel's office put in one request in July 2010 for an affidavit of assignment, billing statements and a bill of sale. After the Court's order on September

LAW.COM    Welcome to the Law.com network. Click here to register and get started.    Sign Out | My Account

*9

minimal documents, or the remainder of the documents as ordered by the Court, until after this matter was scheduled for the sanctions/contempt hearing. Rather than trying to proactively obtain these documents from their client, plaintiff's counsel waited for over five months for the client to send them the documents. Moreover, as noted above, the documents requested were only some of the documents ordered to be produced by the Court.

Based upon all the foregoing, the Court finds that plaintiff's counsel Rubin & Rothman, LLC's failure to obtain the requisite documentary or other verifiable proof of the claim alleged, including the entire chain of assignment(s), prior to commencing the instant action against defendant constitutes frivolous conduct within the meaning of 22 NYCRR §130.1-1. Based thereon the Court hereby imposes a monetary sanction against Rubin & Rothman, LLC in the sum of $10,000.00 which is to be paid by Rubin & Rothman, LLC to the Lawyer's Fund for Client Protection no later than July 25, 2012.

Proof of compliance with this Decision and Order shall be filed with the Clerk of this Court by that same date.

Regarding the issue of contempt, in its sound discretion, the Court declines in this instance to hold plaintiff's counsel Rubin & Rothman, LLC in contempt for failing to comply with the Court's directive. The Court trusts that plaintiff's counsel shall commence actions on behalf of assignee creditors in the future only after having received sufficient documentary or verifiable proof of the alleged claim and that they will adhere to future directives issued by any court before which they appear. Any future failure by plaintiff's counsel to comply with an order of this Court will not be tolerated.

This constitutes the Decision and Order of the Court.

1. Mr. Torres testified that Sherman Originator, LLC and Sherman Originator III, LLC are related, but separate entities.

2. The Court notes that plaintiff's computerized attorney notes for the case which were produced at the hearing and testified to by Ms. Watts indicate that bankruptcy and death searches were performed. However, these do not constitute investigation into the debt itself but rather whether the defendant is judgment proof.

3. Although Ms. Watts testified that an affidavit of merit was requested on July 20, 2010, a review of the computer notes produced as an exhibit indicates that the affidavit of merit had already been received from the client on June 10, 2010. Rather, the computer notes show that an "AOA" was requested on July 20, 2010, more likely an affidavit of assignment.

Terms & Conditions    Privacy Policy    Advertise    Contact NYLJ    About NYLJ    RSS    Subscribe

the LAW.COM network

| LAW.COM | ALM REGIONAL | DIRECTORIES | BOOKS & NEWSLETTERS | EVENTS & CONFERENCES |
|---|---|---|---|---|
| Newswire | Connecticut Law Tribune | ALM Experts | Best-Selling Books | ALM Events |
| Special Reports | Daily Business Review (FL) | LegalTech® Directory | Publication E-Alerts | LegalTech® |
| International News | Delaware Law Weekly | In-House Law Departments at the | Law Journal Newsletters | Virtual LegalTech® |

Welcome to the Law.com network. Click here to register and get started.    Sign Out | My Account

LAW.COM

| | | | | |
|---|---|---|---|---|
| Site Map | New Jersey Law Journal | The American Lawyer Top Rated Lawyers | | Insight Information |
| **ALM NATIONAL** | New York Law Journal | Corporate Counsel Top Rated Lawyers | **RESEARCH** | **REPRINTS** |
| The American Lawyer | GC New York | | ALM Legal Intelligence | Reprints |
| The Am Law Litigation Daily | The Recorder (CA) | The National Law Journal Leadership Profiles | Court Reporters | |
| Corporate Counsel | Texas Lawyer | National Directory of Minority Attorneys | MA 3000 | **ONLINE CLE** |
| Law Technology News | | | Verdict Search | CLE Center |
| The National Law Journal | | | ALM Experts | |
| | | | Legal Dictionary | **CAREER** |
| | | | Smart Litigator | Lawjobs |

About ALM  |  About Law.com  |  Customer Support  |  Reprints  |  Privacy Policy  |  Terms & Conditions
Copyright 2012. ALM Media Properties, LLC. All rights reserved.



## Certificate of Service

I, Brian Bromberg, an attorney, hereby certify that on July 27, 2012, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Eastern District of New York's Local Rules, and/or the Eastern District's Rules on Electronic Service upon the following parties and participants:

Robert Arleo, Esq.

William Horn, Esq.

Dated:    New York, New York
          July 27, 2012

                                                    /s/ Brian L. Bromberg_____
                                                        Brian L. Bromberg

Brian L. Bromberg
Bromberg Law Office, P.C.
40 Exchange Place, Suite 2010
New York, NY 10005

5