UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x

JOHN T. CORPAC, an individual; on behalf of himself and all others similarly situated,

                Plaintiffs,

vs.

RUBIN & ROTHMAN, LLC, a New York Limited Liability Company; and JOHN AND JANE DOES NUMBERS 1 THROUGH 25,

                Defendants.

------------------------------------------------------------x

CASE NO.: 2:10-cv-04165-ADS-ETB

**MEMORANDUM OF LAW IN REPLY TO OBJECTOR'S MEMORANDUM, OF LAW IN FURTHER SUPPORT OF PATRICK SEJOUR'S OBJECTIONS AND MOTION TO INTERVENE**

Plaintiff John Corpac, individually and on behalf of the class, by and through their counsel, William Horn, pursuant to this Court's order of July 18, 2012, respectfully submits the following reply memorandum of law in response to the contention of counsel for Objector Patrick Sejour there existed a conflict of interest between counsel for the class and the defendant which materially and negatively affected the class settlement agreement in this case:

### I.     REPLY INTRODUCTION

On July 18, 2012, this Court provided to the parties leave to submit written memoranda concerning the claim by counsel for Mr. Sejour there was a relevant conflict of interest between William Horn and Robert Arleo, counsel for the class and defendant, respectively. In its Order, the Court stated:

> At the conclusion of the hearing, the Court granted the parties an opportunity to submit papers addressing the alleged conflict of interest between Mr. Horn and Mr. Arleo. The Court directed Mr. Horn and Mr. Arleo to submit their papers no later than July 23, 2012, and permitted the Objector's counsel until August 23, 2012 to submit an opposition.

Doc. No. 36, pgs. 2-3. The Court then provided leave to class counsel and defense counsel to file and serve by September 7, 2012 a reply to Mr. Sejour's opposition. Doc. No. 36, pg. 5.

Unfortunately, but unsurprisingly, the main thrust of Objector Mr. Sejour's opposition is once again (*see also*, Doc. Nos. 27, 32, 34, and 46) the denigration, without evidentiary support, the reputation of counsel for the class. In short, or so the argument appears, Mr. Sejour relentlessly directs his venomous tirade at Mr. Horn and Mr. Arleo personally, and the adequacy of the settlement agreement in general, while wholly glossing over the fact there is no evidence supporting his contention that counsel for the parties were conflicting and that such a conflict impacted their negotiations. In short, Mr. Sejour's responsive memorandum offers factual contentions outside the parameters envisioned by the Court's Order of July 18, 2012 and in no way further illuminates the baseline claim initially made by Mr. Sejour concerning a conflict of interest between counsel for the parties. In light of these facts, Mr. Sejour's conflict of interest contention should be disregarded by the Court as unfounded based upon the record evidence.

## II.   ARGUMENT

Pages one through eleven of Mr. Sejour's responsive memorandum deal with issues outside the scope contemplated by this Court. Which is to say, in response to this Court's grant of leave to the parties to brief the issue of "the alleged conflict of interest between Mr. Horn and Mr. Arleo," Mr. Sejour's counsel rush head-long into a veritable manifesto of unsupported, salacious claims dressed up as material supporting Sejour's counsel's collective conclusion that counsel for the class and the defendant secretly harbored a conflict of interest which, standing alone, rendered the class settlement agreement fundamentally unfair.[1] However, there is absolutely no evidence – none – demonstrating either a conflict of interest in this matter or a negative impact to the class resulting from the prior relationship between Mr. Arleo and Mr.

---

[1] The parties appear to agree, in view of the Second Circuit's recent decision in *Hecht v. United Collection Bureau, Inc.,* 2012 U.S. App. LEXIS 17374 (2d. Cir. August 17, 2012), that the class settlement agreement preliminarily approved by the Court on April 5, 2012 (Doc. No. 23) must be reformed.

Horn. Indeed, it appears that Mr. Sejour's counsel simply generated the basis for this conflict[2] out of whole cloth as Mr. Horn did not engage in settlement discussions with Mr. Arleo, but instead negotiated the matter with attorney Joseph Latona.

Indeed, attorney Latona, a member of the bar of this Court, declares, in relevant part:

4. At no time have I ever worked with Mr. Horn or had any type of relationship with him other than an adversarial one. My only interest in this case is to represent my client and employer, Rubin Rothman, LLC to the best of my ability and within the ethical and legal parameters imposed by the Court and the New York bar.

5. Since the commencement of this action, I consulted with and was directed in my discussions with Mr. Horn by my employer, Keith H. Rothman, Esq. concerning the terms of the class action settlement. From time to time during these negotiations, we consulted with Robert Arleo, Esq.

6. To my knowledge, at no time did Mr. Arleo communicate directly with Mr. Horn in regard to the class action agreement during the time in which settlement negotiations were taking place. Importantly, I never engaged in a telephone conference call with Mr. Horn and Mr. Arleo during the time settlement negotiations were taking place, or at any time for that matter, nor did I ever meet with both attorneys together at any time. Moreover, at no time did Mr. Arleo ever inform me that he had engaged in settlement negotiations directly with Mr. Horn concerning the terms if the class action settlement.

7. As stated above, Mr. Rothman and I did speak with Mr. Arleo on occasion since the inception of this action. We sought his professional advice regarding procedural class action issues as I do not typically litigate class action matters. At no time, however, did Mr. Arleo ever seek to influence settlement discussions which were occurring between Mr. Horn, Mr. Rothman and me, nor did he otherwise request to participate in the settlement negotiations.

While it may turn out the class settlement agreement may have to be reformed, the reason is intervening and controlling decisional authority, not any effort by Mr. Sejour's counsel to smear counsel for the parties or any actual conflict between Mr. Horn and Mr. Latona (who actually negotiated this agreement) or Mr. Arleo who subsequently became co-counsel of record.

---

[2] Ostensibly that the friendship or business relationship or otherwise between Mr. Horn and Mr. Arleo caused them to collude to settle this matter on terms bad for the class.

The gravamen of Mr. Sejour's objection that counsel harbored a conflict relies exclusively on a purported conflict between Mr. Arleo and Mr. Horn based upon previous co-counseling in other FDCPA cases, Mr. Arleo's threat to withdraw from matters on which counsel were both of record in the matter, and the fact Mr. Horn and Mr. Arleo had a previous attorney-client relationship in which Mr. Arleo represented Mr. Horn. Each of these contentions are discussed, in turn, below.

**A.   The co-counseling relationship between Mr. Arleo and Mr. Horn did not Create a Conflict of Interest Between Mr. Horn and the Class**

At the outset, it deserves mention that the contentions advanced in Mr. Sejour's brief vis-à-vis the claimed conflict of interest are unsupported by any decisional authority on point. That is, there is no case supplied by Mr. Sejour indicating his conflict-of-interest theory is viable on similar facts and under similar circumstances. While it is true that conflicts of interest must be avoided to the extent practicable in class cases, the sort of conflicts about which the courts are concerned are those between counsel and adverse parties.

Indeed, in one of the conflict cases cited by Mr. Sejour (Doc. No. 46, page 14 of 27), *International Union, United Auto., Aerospace, and Agr. Implement Workers of America v. General Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007) the Circuit Court states as much:

> More, [class counsel's] involvement in the negotiations was an essential check on the process, safeguarding the rights of absent class members. Unaffiliated with the [the defendants themselves], both professionally and financially, Payne had every incentive to press the classes' claims…

There has been no suggestion, factually supported or otherwise, that Mr. Horn had any conflict in relation to the Defendant in this case. There is no such suggestion because there can be none as Mr. Horn has no connection whatsoever to the Defendant. As such, there is no cognizable conflict of interest in this matter.

Reading through the myriad allegations set forth by Mr. Sejour, it appears his corollary argument on this point is that he is concerned there was some kind of collusion between counsel to provide the Defendant a "sweetheart deal" in exchange for payment of attorney's fees, the sort of collusion that courts generally seek to avoid. However, there is no evidence of any sort of collusion between counsel here. Indeed, the suggestion is nothing short of bald conjecture of the worst sort. The federal Fair Debt Collection Practices Act (the "FDCPA") provides for class relief (15 U.S.C. § 1692k(a)(2)(B)) with statutory limited recovery. There is no dispute that the relief accorded the class in this FDCPA case was the maximum available under the circumstances and there is no evidence advanced by Mr. Sejour which establishes – or for that matter which even results in a permissible inference – that Mr. Horn did not by his own industry and effort earn every dollar which the Defendant agreed to pay.[3]

In separating the wheat from the chaff here, the real basis for Mr. Sejour's objection is both the statewide character of the settlement and the release of individual claims on notice which is argued was inappropriate. The first concern, however, has often been the subject of analysis by courts critical of arbitrarily limiting the scope of classes. *See e.g.*, *Guevarra v. Progressive Fin. Servs.*, 2006 U.S. Dist. LEXIS 89193 (N.D. Cal. 2006). The second concern, whether valid or not under *Hecht*, *supra*, is being addressed on the strength of the analysis included in that later-decided Second Circuit case. Thus, there is no *bona fide* basis at this stage of the proceedings for Mr. Sejour's objection and, to the extent his objection is nevertheless based upon an avowed conflict of interest, that objection fails on the facts and law present in the record. Accordingly, Mr. Sejour's objection must be overruled as alternately lacking in merit and moot.

---

[3] The FDCPA also allows for recovery of reasonable attorney's fees and costs. 15 U.S.C. §1692k(a)(3).

**B.   Mr. Arleo's Threats to Withdraw from Unrelated Cases in Which He Was Co-Counsel with Mr. Horn Have No Bearing Upon this Case**

As the Court is aware, Mr. Arleo simply did not negotiate the settlement of this matter together with Mr. Horn. Thus, it simply cannot be substantiated that any relation, of any sort, between Mr. Arleo and Mr. Horn impacted the terms of the class settlement agreement. To the extent there is any chance a revised class settlement agreement will be reached in light of the intervening change in law attributable to *Hecht*, the Court is well aware of every conceivable facet, relevant and irrelevant alike, of the relationship between Mr. Arleo, on the one hand, and Mr. Horn, on the other. The Court is, therefore, exceedingly well positioned to gauge the propriety of any new class settlement agreement between the parties. Though counsel for the plaintiff and the class denies this was ever a legitimate issue in this case, any concern harbored by the Court may easily be resolved going forward.

Regarding specifically Mr. Arleo's withdrawal or not from cases in which he was also co-counsel with Mr. Horn, there is no evidence of any sort that Mr. Horn was – or that going forward he would be – impacted by that potential state of affairs. As the Court will note from Mr. Horn's declaration filed in support of class certification in this matter (Doc. 22-4), Mr. Horn is more than capable, in this case and others, to handle the laboring oar of class proceedings on his own. That he chose in various instances to co-counsel with Mr. Arleo is telling of little, thus, there is simply no merit to the contention that Mr. Arleo's withdrawal, or threat of withdrawal, from any such case would materially impact Mr. Horn's decision-making under any circumstance, let alone in this matter.

Likewise, there is no merit to the contention that Mr. Horn and Mr. Arleo operated a *de-facto* partnership in co-counseling cases. Mr. Horn and Mr. Arleo owed each other no independent duty which could conceivably impact the current, or any future, class settlement

-6-

agreement and there is no evidence to the contrary on this record. To suggest otherwise, particularly in light of the dearth of evidence in support of such a claim, is the height of fiction and should not be seriously considered – let alone countenanced – by this Court.

**C.     Mr. Arleo's Prior Representation of Mr. Horn has No Bearing on this Case**

The last segment of Mr. Sejour's argument is that Mr. Horn is conflicted from representing any class in which Mr. Arleo is defense counsel because Mr. Arleo was previously his attorney in an unrelated matter. This contention merits little analysis based upon hornbook principles of law. First, Mr. Arleo would have owed various duties attendant to the attorney-client relationship to Mr. Horn, not the other way around. Mr. Horn, as the client, would have the right to object to Mr. Arleo's representation of the Defendants here, but there is no legal principle which would have given sufficient pause to question Mr. Horn's right to represent this or any future class under the applicable rules of professional conduct. In short, the fact Mr. Horn was previously represented by Mr. Arleo does not give rise to any conflict of interest cognizable under the New York Rules of Professional Conduct, as adopted by the Local Rules of this Court. Moreover, should the Court determine based upon this information that further scrutiny of any later class settlement agreement is warranted, counsel stand ready and able to defend their decisions based upon the facts, circumstances, and law applicable to these claims.

**D.     Request for Further Briefing if Warranted**

Plaintiff has deliberately responded in reply only to those arguments contained in Mr. Sejour's response for which the Court provided leave for briefing. As such, there are several factual contentions and arguments, though ancillary to the Court's leave, which were included in Mr. Sejour's memorandum for which no reply is provided.[4]  If the Court is inclined to resolve

---

[4] As an example of the extraneous, denigrating and absolutely false statements recklessly made by Mr. Sejour is his statement, at page 3 of his Opposition Memorandum, that Mr. Horn did not produce financial documents as required by the Court. As the Court is well-aware, and as was set forth in Your Honor's Order of July 18, 2012 [Doc. 36],

this issue on any of the extra-leave contentions or arguments supplied by Mr. Sejour, Plaintiff and the class respectfully request leave of Court to supply a short and concise memorandum of any such issues identified by the Court.

### III. CONCLUSION

The briefing of this issue has, it seems, devolved into a name-calling and innuendo-filled sort of theater wherein counsel for the parties have been subject to all manner of mudslinging. The simple truth of the matter, however, is that there is no legally tenable basis upon which Mr. Sejour may maintain his conflict-of-interest argument which underpins his attempt to remove Mr. Horn as class counsel in this case. Moreover, in light of the intervening change in the law pursuant to *Hecht*, Mr. Sejour's claims have been mooted as counsel for the parties are now required to reexamine whether their class settlement agreement should be revised in light of that new decisional authority.

Whatever the outcome of those negotiations, class counsel takes seriously the obligation, and indeed privilege, to champion the cause of the class in this case. There has not been, nor can there be, any reasonable basis to question class counsel's understanding of his obligation or dedication to discharge of the same. While the relationship between counsel for the parties has clearly given pause to Mr. Sejour and his attorneys, nothing about that relationship has impacted class counsel's decision-making in this case in relation to the class-settlement agreement, nor could it, as Mr. Arleo did not negotiate that agreement.

Accordingly, based upon the record in this case, the initial and these papers submitted pursuant to this Court's leave, and any additional argument or evidence advanced pursuant to

---

Your Honor Ordered Mr. Horn to provide the Court with financial information relied on in determining net worth of the Defendant. Further Ordering that such "information may be submitted *ex parte* and under seal until the Court determines whether it is necessary to disclose such information to the objector.", Mr. Sejour has no idea that Your Honor had properly been supplied with such information on August 3, 2012 but intended to deceive the Court into thinking that Mr. Horn, as has been done by Mr. Sejours counsel, failed to follow the Court's Order

subsequent leave or any hearing on this matter, Plaintiff respectfully submits that class counsel harbors no conflict of interest which has, or will in the future, disqualify him from serving as a fiduciary to the class. In view of that, Plaintiff likewise respectfully submits that Mr. Sejour's objection should be overruled either on the merits, or as moot, or both.

DATED:     Fresh Meadows, New York
           September 7, 2012

*[signature]*
William F. Horn, Esq. (WH-1070)
LAW OFFICE OF WILLIAM F. HORN
188-01B 71st Crescent
Fresh Meadows, NY 11365
Telephone: (718) 785-0543
Facsimile: (866) 596-9003
E-Mail: bill@wfhlegal.com

*Attorney for Plaintiff, John T. Corpac, and all others similarly situated*