UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
JOHN T. CORPAC, an individual; on behalf of
himself and all others similarly situated,

             Plaintiffs,

        - against -

RUBIN & ROTHMAN, LLC, a New York,
Limited Liability Company; and JOHN AND
JANE DOES NUMBERS 1 THROUGH 25,

             Defendants.

----------------------------------------------------------------x

**AMENDED
MEMORANDUM OF
DECISION AND ORDER**
CV 10-4165 (ADS)

**A P P E A R A N C E S:**

**LAW OFFICES OF WILLIAM F. HORN**
      Attorney for the Plaintiffs
      188-01B 71st Crescent
      Fresh Meadows, New York  11365
BY:   William F. Horn, Esq., of Counsel

**RUBIN & ROTHMAN**
      Attorneys for the Defendant *Rubin & Rothman*
      1787 Veterans Memorial Highway
      Islandia, New York  11722
BY:   Joseph Latona, Esq., of Counsel

**ROBERT L. ARLEO, ESQ.**
      Attorney for the Defendant *Rubin & Rothman*
      164 Sunset Park Road
      Haines Falls, New York  12436

**BROMBERG LAW OFFICE, P.C.**
      Attorneys for the Objector, Patrick Sejour
      40 Exchange Place, Suite 2010
      New York, New York  10005
BY:   Brian L. Bromberg, Esq., of Counsel

**CAMBA Legal Services**
      Attorneys for the Objector, Patrick Sejour
      885 Flatbush Avenue, 2nd Floor
      Brooklyn, New York  11266
BY:   Matthew A. Schedler, Esq., of Counsel


**SPATT, District Judge.**

As stated by the Court in a prior Order, this case involves allegations by John T. Corpac, on behalf of himself and a putative class (the "class" or "the plaintiffs"), that Rubin & Rothman, LLC ("the defendant") sent written collection communications that falsely represented or implied that an attorney had meaningfully reviewed the plaintiff's account and was meaningfully involved with the decision to send the communication, in violation of the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, et. seq.

This law suit was commenced on September 8, 2010.  On March 3, 2011, the parties notified the Court that they had settled the case.  On January 16, 2012, the parties filed a motion to certify the class and grant preliminary approval of the class action settlement.

On June 25, 2012, the Court held a fairness hearing on the proposed settlement of the case.  Patrick Sejour ("Sejour" or "the objector") opposed the settlement on the grounds that: (1) there was a conflict of interest between counsel for the plaintiffs, William F. Horn, Esq., of the Law Office of William F. Horn ("Horn" or "class counsel") and counsel for the defendant, Robert L. Arleo, Esq. ("Arleo"); (2) the terms of the settlement relating to the size of the class; the defendant's net worth; and the release of claims were vague and unfair; and (3) the provision of the settlement providing for an award of attorney's fees for class counsel of $75,000 was excessive.  The objector was

represented at this hearing by Brian L. Bromberg, Esq., of Bromberg Law Office, P.C. ("Bromberg") and Matthew A. Schedler, Esq., of CAMBA Legal Services ("Schedler" and together with Mr. Bromberg, "objector's counsel").

At the conclusion of the hearing, the Court granted the parties an opportunity to submit papers addressing the alleged conflict of interest involving Horn and Arleo. Also reviewed in this decision is a charge of an alleged "kickback scheme" attributed to Bromberg and a request for disciplinary proceedings against Bromberg, Schedler and Horn.

## I. BACKGROUND

The Court will now review the evolving law suit, the proposed settlement and the notice to potential class members events that proceeded this claim of "conflict of interest" and alleged attorney misconduct.

The proposed settlement of this class action law suit is for the total sum of $87,900, apportioned as follows:

| | |
|---|---|
| To the named plaintiff, John T. Corpac consisting of $1,000 as damages and $2,500 for his services to the class members | $3,500.00 |
| To a charitable organization as a cy pres payment | $9,400.00 |
| For attorneys fees to plaintiff's counsel | $75,000.00 |
| Total: | $87,900.00 |

The Fair Debt Collection Practices Act, 15 U.S.C. § 1692K provides in relevant part:

§ 1692K. Civil Liability

(a) Amount of damages
Except as otherwise provided by this section, any debt collector who fails

3

to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of –

> (1) any actual damage sustained by such person as a result of such failure;
>
> (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or
>
>     (B) in the case of a class action, (I) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and
>
> (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.  On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

Under the provisions of this statute, the plaintiff would be entitled to damages in the sum of $1,000.  The other class members would be entitled to 1 per centum of the net worth of the debt collector or the sum of $500,000 whichever is less.  Here, according to the plaintiff's counsel the net worth of the defendant law firm is approximately $960,000 and the settlement figure of $9,400 is almost the full value of the statutory sum.

## II.  <u>THE NOTICE ISSUE</u>

The notice to the class agreed to by the plaintiff and the defendant is set forth in the "Joint Motion For An Order Conditionally Certifying Class and Granting Preliminary Approval of Class Action Settlement" submitted on January 16, 2012.  The notice

agreed upon at page 10 is a "a summary advertisement notifying settlement class

members of the settlement in a weekday edition of the <u>New</u> <u>York</u> <u>Post</u>, which is a

publication with statewide distribution in the State of New York."  According to an

affidavit sworn to by one Lisa Modica, the principal clerk of the publisher of the <u>New</u>

<u>York</u> <u>Post</u>, a Notice of Class Action and Proposed Settlement was published in the <u>New</u>

<u>York</u> <u>Post</u> "once" on April 14, 2012.

In the letter from attorney Brian L. Bromberg dated June 22, 2012, he

complained of a "Deficient Notice."  In particular, Bromberg stated:

> Second, the one-time publication notice given in the <u>New</u>
> <u>York</u> <u>Post</u> was plainly not the "best notice that is practicable
> under the circumstances, including individual notice to all
> members who can be identified through reasonable effort."
> Fed.R.Civ.P. 23(c)(2)(B).  Mr. Sejour did not learn of the
> proposed settlement until today . . . Because this class
> action arises from allegations concerning letters sent and
> complaints served by Rubin & Rothman, there is no valid
> excuse for not sending class notice by regular first-class
> mail.  Moreover, Rubin & Rothman does business statewide,
> so publication notice through the <u>New</u> <u>York</u> <u>Post</u> is unlikely
> to reach anyone outside of New York City.  The method of
> class notice chosen appears to have been calculated <u>not</u> to
> apprise Mr. Sejour and the other class members of their
> opportunity to opt out and object to this settlement.

With regard to the notice, in a letter from plaintiff's counsel, William F. Horn,

dated August 18, 2012, he states the following:

> I am Class Counsel in the referenced matter.  Defendant's
> counsel, Robert L. Arleo, joins me in this letter.
>
> Mr. Arleo and I believe it is our ethical duty to promptly
> advise Your Honor of the ruling issued yesterday by the
> Second Circuit Court of Appeals in the matter of <u>Hecht v.</u>
> <u>United Collection Bureau, Inc.</u>, 2012 U.S. App. LEXIS
> 17374.  A copy of the <u>Hecht</u> decision is attached for the
> Court's convenience.  In short, the Parties believe the

> Second Circuit's decision in <u>Hecht</u> raises due process concerns with respect to the manner/frequency of notice provided to the class in this case and, therefore, the Parties believe Your Honor may wish to re-examine the Court's preliminary certification ruling.
>
> Should the Court decide that additional class notice is required, the Parties will thereafter engage in discussions as to the proper course of revisionary action, if any, to undertake in order to satisfy the mandates of the recent <u>Hecht</u> decision.

In <u>Hecht v. United Collection Bureau, Inc.</u>, 691 F.3d 18 (2d Cir. Aug. 17, 2012), the plaintiff contended that she did not receive constitutionally adequate notice of class certification and settlement. The publication of the notice was in a single issue of <u>USA Today</u>. The Second Circuit held that the single notice in a single publication did not satisfy either due process or the provisions of Rule 23(b)(3). The opinion clearly states that the single notice in a single publication, under these circumstances, is a due process violation. In this regard, the Court stated:

> Having established that Hecht was entitled to the protections afforded under <u>Shutts</u>, we next consider whether the <u>USA Today</u> notice satisfied due process requirements. We conclude that it did not. To comport with due process, the notice provided to absent class members must be "the best practicable, 'reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" <u>Shutts</u>, 472 U.S. at 812 (quoting <u>Mullane v. Cent. Hanover Bank & Trust Co.</u>, 399 U.S. 306, 314-15 (1950)). "[W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." <u>Mullane</u>, 330 U.S. at 315. "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." <u>Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.</u>, 396 F.3d 96, 113-14 (2d Cir. 2005).

\*     \*     \*     \*     \*

We are aware of no case in our Circuit holding that a single notice published in a single publication satisfied either due process or Rule 23(b)(3).  To the contrary, when courts have approved notice by publication, they have tended to do so where the notices either ran more than once or appeared in more than one publication.  See, e.g., In re Agent Orange Prod. Liab. Litig., MDL No. 381, 818 F.2d at 167-68 (notification procedure included individual mailings and various substitute notice, such as notice in national publications and on radio and television); Handschu v. Special Servs. Div., 787 F.2d 828, 833 (2d Cir. 1986) (approving publication over a period of weeks in several metropolitan New York newspapers); In re MetLife Demutualization Litig., 689 F. Supp. 2d 297, 345, 349 (E.D.N.Y. 2010) (approving notice of settlement via "publication over a two-week period, four times in each of four widely read newspapers"); Buxbaum v. Deutsche Bank, AG, 216 F.R.D. 72, 76-77 (S.D.N.Y. 2003) (notice adequate where individual notice was "mailed to all class members . . ., and also published in the national edition of the Wall Street Journal and USA Today"); see also In re GAC Corp., 681 F.2d 1295, 1300 (11th Cir. 1982) (notice "published twice in 53 leading newspapers worldwide" satisfied due process).

Hecht persuasively argues that "aside from individual mailed notice, the defendant could have also undertaken a more extensive notification campaign - - including electronic media, local publications, and the like - - that would have been more than the 'mere gesture' exemplified by the one-time USA Today notice."  We agree.  Reasonableness is admittedly a flexible standard, but to hold that this notice satisfied due process would rob the words of the Supreme Court of their meaning.  It is difficult to imagine a manner of providing notice more akin to the "mere gesture" deprecated in Mullane, 339 U.S. at 315, or less "reasonably calculated . . . to apprise interested parties of the pendency of the action," Shutts, 472 U.S. at 812 (internal quotation marks omitted), than the Gravina notice.

\*     \*     \*     \*     \*

Another consideration persuades us further that the USA

> Today notice did not satisfy due process. In assessing the
> adequacy of class action notice, we have sometimes
> considered whether any class members responded to the
> notice. See, e.g., Handschu, 787 F.2d at 833. Thus, we
> rejected a due process challenge to the notice of settlement
> in Handschu in part because "[w]here . . . the notice of
> settlement prompts widespread reaction from class
> members, it would appear that the notice has served its due
> process." Id. Here, in contrast - - and unsurprisingly, given
> the quality of the notice - - no class member came forward.

691 F.3d at 254-55.

In the defendant's Reply Memorandum of Law by attorney Arleo, he states the

following:

> Based upon Hecht v. United Collection Bureau, 2012 U.S.
> App. LEXIS 17374, a decision issued by the Second Circuit
> Court of Appeals on August 17, 2012 which directly affects
> the notice provision of the CSA herein, the parties are now
> obligated to withdraw their request for final approval of the
> CSA. The parties will soon present the Court with a revised
> plan of providing notice to the class members so as to
> satisfy the Hecht mandates.

Accordingly, the Court withdraws its previous denial of the objector's application

to vacate the notice to potential class members. The Court finds that the single notice

in the single New York Post publication violated due process requirements and is

determined to be insufficient and invalid. The attorney for the plaintiff is directed to

determine a proper and constitutionally valid method of notice, by a renewed

application to the Court and counsel on or before February 8, 2013. Also, final approval

of the settlement will await the results of the renewed application by counsel, the

resolution of the conflict of interest issue, and the new method of notice to the potential

class members.

## III. **THE CONFLICT OF INTEREST ISSUE**

In the letter dated June 22, 2012, from Bromberg, the attorney for Patrick Sejour, the objector, he contends that William F. Horn, cannot serve as class counsel for the plaintiff because he has a conflict of interest that cannot be remedied. Bromberg asserts that Horn failed to disclose that he is a "client of Robert Arleo, Esq., counsel for defendant Rubin & Rothman, LLC, and that he and Mr. Arleo have co-counseled numerous FDCPA cases." Bromberg further asserts that Arleo represented Horn as plaintiff in a class action law suit in 2009. Also after 2009, Arleo and Horn "have co-counseled in at least 25 individual and class action FDCPA cases, at least some of which remain open." Bromberg cites fourteen cases in which Horn and Arleo co-counseled, and says that "this is only a partial list of the cases that Mr. Horn and Mr. Arleo have co-counseled." According to Bromberg's letter, a partial list of the cases in which Arleo and Horn have co-counseled since 2009 is as follows:

> Arleo and Mr. Horn have co-counseled dozens of individual and class action FDCPA cases, at least some of which remain open. See, e.g., Felix v. Capital Management v. Capital Management Services, L.P., WDNY, No. 11-cv-7 (RJA)(LGF); Felix v. Mercantile Adjustment Bureau, LLC, WDNY, No. 11-cv-8 (WMS)(JJM); Felix v. Mercantile Adjustment Bureau, LLC, WDNY, 11-cv-296 (WMS)(JJM); Felix v. Northstar Location Services, LLC, WDNY, 11-cv-166 (JJM); Harb v. Northstar Location Services, LLC, WDNY, No. 11-cv-253 (JJM); Harrigan v. Receivables Performance Management, LLC, NDNY, No. 09-cv-1351 (RFT); Harrigan v. Weltman, Weinberg & Reis Co., LPA, NDNY, No. 11-cv-268 (GTS)(DRH); Inman v. QAR, LLC, WDNY, No. 11-cv-295 (RJA); Kavalin v. CR-One Solutions, WDNY, No. 11-cv-6 (WMS)(HBS); Kavalin v. Global Credit & Collection Corp., WDNY, No. 10-cv-314(JTC); Krug v. Mercantile Adjustment Bureau, LLC, WDNY, No. 10-cv-689 (WMS)(LGF); Leidl v. Tritium Card Services, Inc., EDNY, No. 10-cv-3599 (LDW)(ETB); Meloskie v. Northstar Location Services, LLC,

WDNY, No. 11-cv-9 (WMS)(JJM); Pawelczak v. Cardworks Servicing, LLC, EDNY, No. 10-cv-3600 (JFB)(AKT).  This is only a partial list of the cases that Mr. Horn and Mr. Arleo have co-counseled.

Bromberg concludes his conflict of interest argument by stating that "At the very least, Mr. Horn and Mr. Arleo's relationship raises questions as to whether the settlement – which provides no tangible benefit to the class members – was negotiated at arms length."

In response to the Bromberg conflict contentions, Horn asserts that Arleo was not the attorney for the defendant at the time of the settlement in this case; Arleo had nothing to do with the settlement; and he never spoke to Arleo about the settlement. According to Horn, the attorney representing the defendant at the inception of the law suit and who was solely involved in the settlement filed with the court on March 1, 2011 was Joseph A. Latona, Esq.  Both Horn and Arleo state that Arleo was not brought into the case as another attorney for the defendant until December 21, 2011.  Apparently, Arleo was added as additional counsel for the defendant because, as stated by attorney Latona in his affirmation, he "sought his professional advice regarding procedural class action issues as I do not typically litigate class action matters."  Latona further states that, "At no time, however, did Mr. Arleo ever seek to influence settlement discussions which were occurring between Mr. Horn, Mr. Rothman and me, nor did he otherwise request to participate in the settlement negotiations."

So that the issue is this: Arleo and Horn have been associated together as counsel in at least 23 other cases; Arleo represented Horn in another case, and they obviously have a close relationship.  When this case commenced Joseph A. Latona

represented the defendant Rubin & Rothman, LLC.  Latona and Horn negotiated a settlement in March 2011, very shortly after the commencement of this action. Apparently, Arleo was not involved in the settlement in any way.  Arleo first became involved nine months later, on December 21, 2011, when he filed his notice of appearance as another attorney for the defendant.

Perhaps, if the class notice was effective and the settlement negotiated by Horn and Latona was approved, the close relationship between Horn and Arleo would not have been relevant and could have been permitted.  However, the present status of the case is that the notice of settlement has been determined to be invalid; the settlement has not been approved; and additional legal work is required.  The questions now before the Court are: (a) is there a conflict of interest with regard to the relationship between Horn and Arleo, and (2) if so, what remedy should be applied?

## A.  The Applicable Conflict of Interest Law

The authority of federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process."  Hempstead Video, Inc. v. Incorporated Village of Valley Stream, 409 F.3d, 127, 132 (2d Cir. 2005) (citing Board of Education v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979)).  In exercising this power, the Court must "attempt [] to balance a client's right freely to choose his counsel against the need to maintain the highest standard of the profession."  Hempstead Video, Inc., 409 F.3d at 1322.

In the Eastern District of New York, ethical standards are governed by the New York State Lawyer's Code of Professional Responsibility.  See Local Civil Rule 1.3. Canon 5 of this Code states that "[a] lawyer should exercise independent professional

judgment on behalf of a client." Canon 9 requires that "[a] lawyer should avoid even the appearance of professional impropriety." Similarly, DR 5-105 provides that: "(A) A lawyer shall decline proffered employment if the exercise of [the lawyer's] independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve [the lawyer] in representing differing interests, except to the extent permitted under DR-5-105(C)."

A motion to disqualify is "committed to the discretion of the District Court." Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990). Because disqualification so seriously affects a client's right to select his or her own counsel, "such relief should ordinarily be granted only when a violation of the Canons of the Code of Professional Responsibility poses a significant risk of trial taint." Glueck v. Jonathan Logan, Inc., 653 F.2d 746, 748 (2d Cir. 1981), citing Armstrong v. McAlpin, 625 F.2d 433, 444-46 (2d Cir. 1980) (en banc), vacated on other grounds and remanded, 449 U.S. 1106 (1981); Board of Ed. v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979). In view of their potential for abuse as a tactical device, motions to disqualify opposing counsel are subject to particularly strict scrutiny. Lamborn v. Dittmer, 873 F.2d 522, 531 (2d Cir. 1989); Decora, Inc. v. DW Wallcovering, Inc., 1899 F. Supp. 132, 135 n.2 (S.D.N.Y. 1995).

It is the duty of the Court "to preserve, to the greatest extent possible, both the individual's right to be represented by counsel of his or her choice and the public's interest in maintaining the highest standards of professional conduct and the scrupulous administration of justice." Hull v. Celanese Corp., 513 F.2d 568, 569 (2d

Cir. 1975).  A "district court is obliged to take measures against unethical conduct occurring in connection with any proceeding before it."  In re American Airlines, Inc., 972 F.2d 605, 611 (5th Cir. 1992), quoting Musicus v. Westinghouse Elec. Corp., 621 F.2d 742, 744 (5th Cir. 1980);  Woods v. Covington County Bank, 537 F.2d 804, 810 (5th Cir. 1976).  There are no hard and fast rules for striking the balance between enforcement of ethical rules and the preservation of client rights.  Instead, "the conclusion in a particular case can be reached only after a painstaking analysis of the facts and precise application of precedent."  Board of Ed. v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979), citing Fund of Funds, Ltd. v. Arthur Andersen & Co., 567 F.2d 225, 227 (2d Cir. 1977).

Also, federal courts have, disqualified an attorney where the attorney was in a position to use privileged information giving his or her client an unfair advantage.  In this case, in accordance with the rule, as stated above, will the current representation of the defendant by Robert Arleo create an "appearance of impropriety"?  See, for example General Motors Corp. v. City of New York, 501 F.2d 639, 648 (2d Cir. 1949) (quoting A.B.A. Code of Professional Responsibility, Canon 9).  Further, when in doubt on an application such as this, the Second Circuit urges courts to lean in favor of disqualification.  Hull v. Celanese Corp., 513 F.2d 568, 571 (1975).  Hull requires that in the disqualification situation, "any doubt is to be resolved in favor of disqualification." 513 F.2d at 571.

Here, as stated above, if the notice to the class members was valid and if the Court were to approve the settlement, there would be no reason to disqualify Robert L. Arleo.  His prior extensive business relationship with Horn did not, in any manner,

involve the prosecution or the proposed settlement of the case.  The settlement was

consummated between Horn and defendant's counsel Joseph A. Latona in March

2011.  Arleo signed in as an attorney for the defendant on December 21, 2011.  There

is no evidence that attorney Arleo had anything to do with the settlement.  However,

that settlement has not yet been approved by the Court.  The notice used by the parties

has been held to be invalid.  Now, the plaintiff's counsel must initiate a new proposed

notice to the prospective class members.  The result of such a more publicized notice is

unknown.  However, with reasonable certainty, a more publicized notice may bring in

additional prospective class members and objectors.  The potential class is large.

Whether this new and much more publicized procedure will result in a settlement

approved by the Court is also unknown.

This means that if Robert Arleo remains as co-counsel for the defendant, he will

have an opportunity to be involved in the future notice, possible objection hearings,

settlement procedures, and a trial if necessary.  In the Court's view this presents a

future potential serious problem.

As stated by Judge Bianco in <u>Filippi v. Elmont Union Free School District Board</u>

<u>of Education</u>, 722 F. Supp. 2d 295, 351 (E.D.N.Y. 2010).  "It is reasonable to conclude

that Ferrigno possess confidential, relevant information and was privy to defendant's

discussions regarding the Filippi matter" including discussions "regarding the merits of

the claim . . . and any possible steps to resolve the claims."  Here, in this case, it is

reasonable to assume that Arleo knows Horn well; that Arleo knows confidential matters

about Horn, his method of handling a FDCPA cause of action and his settlement

methods and techniques.  They were together as co-counsel in at least 23 other class

actions under the same statute. They have an extraordinary business relationship handling a particular type of case together. It is reasonable to conclude that Arleo possesses confidential relevant information about Horn's likes, dislikes, strengths and weaknesses and his techniques and procedures. Arleo is in a position to use privileged information in support of his client, and against the interests of the plaintiff class.

In light of the intervening change in the posture of this case attributable to <u>Hecht</u>, there may be additional class action members, additional objectors and the chance of a revised class action settlement or even a trial. In view of these circumstances, the Court is well aware of its obligation to protect the class members and to make sure that the processes involved in this case are transparent to the class members and to the defendant. Balancing the right of a client to counsel of his or her choice against the enforcement of ethical rules and fair play, Robert Arleo should no longer be in this reactivated case.

### IV. <u>AS TO THE ALLEGED "KICKBACK" SCHEMES AND THE REQUEST FOR DISCIPLINARY PROCEEDINGS</u>

There are allegations of improper conduct asserted by Horn and Arleo against Bromberg and Schedler. Also, there are assertions by Bromberg against Horn and Arleo. The first indication of alleged improper conduct was raised at the Fairness Hearing on June 25, 2012 by Arleo, as follows:

> Once you see what is going on here - - Judge, I will tell you what is going on. This attorney likes to break up these lawsuits under the Fair Debt Collection Practices Act. You know what he does? He did it in another case. He swoops in when he sees a settlement happening, then he tries to intervene so he can break it up. Once he sees there is attorneys' fees involved, then he brings what is called micro class actions. In other words, what he wants to do here is

he wants to break up this whole New York State case and he wants to file class actions which are limited to maybe people on Smith Street in Brooklyn, then another class action for Jones Street in Queens. And why does he do that? Here is why, because in every one of those he gets attorneys' fees.

I will give the Court a citation to a case in California which addressed this very issue, Guevarra. In this case the judge out there filed an Order to Show Cause to direct the attorneys to show cause why they should not be reported to the state disciplinary committee for colluding to break these things up, to churn attorneys' fees.

\* \* \* \* \*

MR. ARLEO:     Guevarra, G.U.E.V.A.R.R.A., v. Progressive Financial. That's 497 F. Sup. 2d 1090. It's Northern District of California 2007.

So what Mr. Bromberg's sole job here today is is to bust up this settlement. He is coming here to create havoc with Matthew Schedler.

\* \* \* \* \*

I know you will let Mr. Bromberg be heard, if he still wants to walk up here and affirm this letter, okay, but I can tell you the only thing that's going on here is an attempt by two lawyers to break this case up and to file micro class actions for no other reason but to generate additional attorneys' fees.

Tr. at 10, 11, 13 and 14.

In an Order of the Court dated July 18, 2012, the Court addressed the allegation by Horn that Bromberg and Schedler are involved in an improper kickback scheme. In this Order it was noted that "Mr. Horn has alleged that Mr. Bromberg and Mr. Schedler are involved in an improper kickback scheme." While the Court stated that such allegations "are on their face unrelated to this case," the Court commented that these

16

allegations are serious.  Also, the Court stated that "equally serious are the implications of Mr. Horn's allegations about the kickback scheme as he made them to this Court without any basis in fact."  As to this issue, the Court requested submissions from Bromberg, Schedler, and Horn, "as to why this case should not be referred to the Chief Judge for possible disciplinary proceedings under Local Rule 1.5(f)."

## A.  The Horn and Arleo Memorandum of July 23, 2012

Annexed to a joint memorandum of law from Horn and Arleo, dated July 23, 2012, is a letter from Bromberg to former United States Magistrate Judge Michael L. Orenstein dated August 24, 2010, referring to a case entitled <u>Gravina v. National Enterprise Systems</u>, Case No: 09-CV-2942 (JFB)(MLO), in which Horn and Arleo were co-counsel for the plaintiff and negotiated a class action settlement.  As in this case, Bromberg planned to file a motion to intervene in order to object to the proposed settlement.  In the letter Bromberg refers to a "payoff to Richard Gravona and the other named plaintiffs . . .", implicitly to obtain their consent to the class settlement agreement.  Horn and Arleo refer to these allegations as "patently baseless and false"; and demanded that Bromberg refract this "false allegation of serious attorney misconduct."  Horn and Arleo then refer to the "inherent power" of this Court to levy monetary sanctions in response to the above litigation practices.

## B.  The Response of Horn dated July 27, 2012

Horn described in detail his education and legal background.  He is now a sole practitioner "and has maintained a growing practice representing consumers on claims under the Fair Debt Practice Act."  He listed the numerous FDCPA cases he is now involved in as class counsel.  About one and one-half years ago, Horn received

information from an "individual" who is unnamed, that a non-profit entity would refer cases only to Bromberg and no other attorney. Upon further investigation, Horn found that other non-profits in the area also regularly referred consumer-related plaintiffs cases to Bromberg and few, if any, other attorneys. From this information, Horn "extrapolated" that there was a financial arrangement between such not-for-profit entities and Bromberg or his firm. When he reviewed Rules 1.5(g) and 7.2(a), Horn believed that this violated, "at the minimum", the spirit of the Rules in relation to referral fees. "In this sense, Horn believed the arrangements between Bromberg and non-profit entities was potentially improper . . . to the extent the statement has offended counsel or the Court or is otherwise viewed as undignified conduct, Mr. Horn respectfully apologizes to both counsel and the Court." (Horn July 27, 2012 Response at 5, 6).

Therefore, under the circumstances presented, Horn respectfully submits that his prior letter regarding Bromberg and the alleged "payoffs" "is not violative of the Rules as required by Local Rule 1.5(b)(5) and respectfully requests that the Court discharge its order to show cause based thereon and decline reference to the Chief Judge for possible disciplinary proceedings." (Horn July 27, 2012 Response at 6).

Further, Horn attempts to explain why he injected the issue of possible "kickbacks" in this case. He does recognize the Court's concern with regard to his statements, and "again offers his sincere apology to the Court and counsel if his suspicion was viewed as being either discourteous or undignified, or both." (Horn Response at 7). In sum, Horn requests that no referral to the Committee on Grievance should be made.

**C. Declaration of Bromberg dated July 27, 2012**

Bromberg asserts that neither he nor Matthew Schedler should be referred to the Chief Judge for disciplinary proceedings, but that Horn should be so referred. He points to the original letter from Horn dated June 29, 2012, as the basis for his request for the referral. The Horn letter, in part, states:

> Nor has Mr. Sejour disclosed to the Court the improper
> financial motives of his counsel – namely, that Mr. Bromberg
> has an improper financial arrangement of kicking back
> money to an attorney (Matthew Shedler [sic]) and his non-
> profit employer (CAMBA Legal Services, Inc.).

Bromberg unequivocally states that "these allegations are false . . . at no time have any kickbacks been paid, promised or agreed to." He then repeats his request to remove Horn as class counsel, "when he is facing with an irremediable conflict of interest that makes him inadequate class counsel . . .." Bromberg concludes his response as follows:

> 18. In sum, there is no basis for referring me or Mr.
> Schedler to the Chief Judge, because no kickback scheme
> exists and Mr. Horn's allegations were made without any
> basis in fact.

**D. Declaration of Matthew Schedler dated July 27, 2012**

Matthew Schedler corroborates the factual statements made by Bromberg in his Declaration. He also states that while neither he or Bromberg should be referred to the Chief Judge for a disciplinary proceeding. Horn should be referred.

**E. The Disposition of This Claim for Referral for Disciplinary Action**

The only conduct that seriously concerned the Court was the allegation by Horn concerning "kickbacks" by Bromberg. That accusation has been withdrawn by Horn who stated, ". . . to the extent the statement has offended counsel or the Court or is

otherwise viewed as undignified conduct, Mr. Horn respectfully apologizes to both counsel and the Court." The Court accepts this apology. It is this Court's policy to err on the side of caution when considering a referral for disciplinary proceedings that could affect an attorney's ability to practice law. There is no such showing here as to any of the lawyers in the case. It is true that lawyers should not make unfair or derogatory comments with regard to opposing counsel. Offensive tactics by lawyers interfere with the orderly administration of justice and have no proper place in our legal system. Such an unfair and derogatory comment was made by Horn regarding Bromberg. However, Horn has apparently realized his error and has withdrawn the comment and apologized to counsel and to the Court, which apology was accepted by the Court.

Reviewing all the events in this vigorously contested matter, the Court finds no reason to impose sanction or to refer any attorney for disciplinary proceedings.

## IV. CONCLUSION

The Court finds for the following:

(1) The attorney Robert L. Arleo is directed to withdraw from this case within twenty (20) days of the date of this Order. He is also requested to advise the Court by letter when this withdrawal has been accomplished.

(2) The request to refer this matter for disciplinary proceedings is denied.

(3) The attorney for the plaintiff is directed to advise the Court by letter on or before February 8, 2013 as to his request for notice to possible class members, in accordance with the instructions set forth in Hecht.

(4) The Clerk of the Court is directed to terminate Docket Number 27, 43 and 48.

**SO ORDERED.**

Dated:  Central Islip, New York
        January 28, 2013


        /s/ARTHUR D. SPATT
        ARTHUR D. SPATT
        United States District Judge