UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN T. CORPAC, an individual; on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> RUBIN & ROTHMAN, LLC, a New York Limited Liability Company; and JOHN AND JANE DOES NUMBERS 1 THROUGH 25, <br><br> Defendants. | No. 10-CV-4165 (ADS)(ETB) |

Memorandum of Law in Opposition to
<u>Defendant Rubin & Rothman's Motion for Reconsideration</u>

Respectfully Submitted,

Brian L. Bromberg
Michael N. Litrownik
Bromberg Law Office, P.C.
40 Exchange Place, Suite 2010
New York, NY 10005
Tel: (212) 248-7906
Fax: (212) 248-7908

Matthew Schedler
CAMBA Legal Services, Consumer Law Project
885 Flatbush Ave, 2nd Floor
Brooklyn, NY 11226
Tel: (718) 940-6311 (x79284)
Fax: (718) 462-5537

Table of Contents

I. Introduction………..……………………………………………………………………....1

II. Legal Standard…………………..…………………………………………………….....1

III. Legal Argument……………………………………………………………………….....2

    a. The Court did not clearly err……………..……………………………………….....2

        i. It was not clear error for the Court to prohibit Mr. Arleo from appearing in this case to litigate future objections………………..…..2

        ii. The Court did not overlook controlling decisions……………………..4

    b. There was no manifest injustice…………………………………………….………8

IV. Defendant is ably represented by current counsel……………………………….10

V. Conclusion………………………………………………………………….……..…11

I.  Introduction

Defendant, Rubin & Rothman, LLC, moves for reconsideration of the Court's order directing that Robert Arleo, Esq. withdraw from this case by February 17, 2013. Specifically, Defendant requests that the Court modify its Order to allow Mr. Arleo to serve as co-defense counsel if the parties negotiate a new judicially approved class notice plan because Mr. Arleo "has special experience dealing with attorney Bromberg in regard to the same objectionary [sic] claims which Bromberg advanced in this action." Deft. Mem. of Law at 4. Defendant apparently believes that Mr. Arleo's "special experience" with Mr. Bromberg in a prior case trumps the irremediable conflict of interest found here by the Court.

Defendant's motion for reconsideration is a frivolous and improper attempt to relitigate the issue of Mr. Arleo's irremediable conflict of interest. Defendant cites no relevant controlling case law the Court may have overlooked in its decision, identifies no clear errors, and identifies no manifest injustice to be prevented (aside from preventing Mr. Arleo from litigating against Mr. Bromberg).

II.  Legal Standard

In the Eastern District of New York, a motion for reconsideration must "set[] forth concisely the matters or controlling decisions which counsel believes the Court has overlooked." Local Civ. R. 6.3. Six specific factors govern the "strict" standard for a court to grant a motion for reconsideration: "(1) if the court overlooks critical facts; (2) if it overlooks controlling decisions that could have changed its decision …. (3) in light of an intervening change in controlling law; (4) in light of new evidence;

1

(5) to correct clear error; or (6) to prevent manifest injustice." *Norton v. Town of Islip*, No. 04–CV–3079, 2013 WL 84896, at *3 (E.D.N.Y. Jan. 7, 2013) (citing *Schrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *Virgin Atl. Airways v. Nat'l Mediation Bd.*, 965 F.2d 1245, 1255 (2d Cir. 1992)).

Moreover, "[a] motion for reconsideration is not intended as a vehicle for a party dissatisfied with the Court's ruling to advance new theories that the movant failed to advance in connection with the underlying motion ... [n]or ... a chance for a party to take a second bite at the apple." *Id.* (citations omitted). But it is within the district court's sound discretion whether it grants the motion. *Id.* (citations omitted).

### III. Legal Argument

Defendant's arguments amount to nothing more than a brazen attempt to take a second bite at the apple and to advance new a brand new theory of why Mr. Arleo should be permitted to remain in the case. The Court should not countenance such a mockery of its rules and precedents. Defendant argues that two reasons justify reconsideration. These arguments will be taken in turn.

#### a. The Court did not clearly err

##### i. It was not clear error for the Court to prohibit Mr. Arleo from appearing in this case to litigate future objections

First, Defendant argues that it was clear error for the Court to find that it would be improper for Mr. Arleo to appear in regard to *future* potential objectors after it found it was likely proper for Arleo to fight Mr. Sejour's objection. Defendant arrives at this conclusion by badly misreading the Court's language and resting its

2

argument on the premise that the Court has tacitly approved of Mr. Arleo's participation in this case. Defendant reasons that because the Court did not immediately remove Mr. Arleo from the case when Mr. Sejour first objected to the settlement on June 22, 2012, (ECF #27), the Court tacitly, implicitly, or explicitly found Mr. Arleo's participation to be proper and should not prevent Mr. Arleo from litigating *future* objections. This argument is spurious and frivolous.

Defendant incorrectly asserts that the Court's Order initially stated that the appearance by Mr. Arleo – after the class settlement agreement was, according to the parties, negotiated by separate counsel for the Defendant – was in all likelihood proper. But the Court nowhere stated that Mr. Arleo's appearance was in all likelihood proper. Instead, the Court stated:

> Perhaps, if the class notice was effective and the settlement negotiated by Horn and Latona was approved, the close relationship between Horn and Arleo would not have been relevant and could have been permitted. However, the present status of the case is that the notice of settlement has been determined to be invalid; the settlement has not been approved; and additional legal work is required.

(ECF #56 at 11). It is misleading and disingenuous for Defendant to state that the Court had held Mr. Arleo's appearance to likely be proper. As the Court makes clear, the class notice was ineffective, the settlement negotiated by Horn and Latona had not been approved, and the settlement had been vigorously attacked by Mr. Sejour. How is it possible, then, that the Court could find such a deficient settlement to reflect a tacit approval of Mr. Arleo's participation? Regardless, Defendant points to no case law or other authority in support of its argument, reflecting its baseless and frivolous nature.

3

Defendant then notes that the Court found that none of the attorneys had engaged in any improper conduct. This is not precisely true as the Court only found no reason to impose sanctions or refer any attorney for disciplinary proceedings after it accepted Mr. Horn's apology for making unfair and derogatory comments directed at Mr. Bromberg and Mr. Schedler. (ECF #56 at 20). This section of the Court's Order concerned Mr. Horn's baseless allegations of an improper kickback scheme and Mr. Bromberg's purported motivation in representing objectors like Mr. Sejour. (ECF #56 at 15-20). It is neither relevant to the discussion of Mr. Arleo's conflict of interest nor to Defendant's argument that the Court committed clear error.

ii. The Court did not overlook controlling decisions

Defendant's second argument concerning the Court committing clear error is that the Court ignored "that the risk of improper use of confidential information by an attorney is limited by the Second Circuit to confidential information regarding a former client, not confidential information concerning another attorney with whom a prior co-counsel relationship existed." Deft. Mem. of Law at 4. Defendant cites a number of cases it incorrectly characterizes as controlling decisions overlooked by the Court. In fact, none of the cases cited by Defendant is controlling or even relevant. It is telling that Defendant does not attempt to distinguish – or even refer to – the on-point cases cited by the Court and relied upon for its decision including, *Filippi v. Elmont Union Free School District Board of Education*, 722 F. Supp. 2d 295 (E.D.N.Y. 2010), and *Hull v. Celanese Corp.*, 513 F.2d 568 (2d Cir. 1975).

4

Defendant cites irrelevant cases and fails to distinguish the cases relied upon by the Court, because it fundamentally misunderstands the Court's rationale for removing Mr. Arleo from the case. The Court began with the undisputed premise that Mr. Horn and Mr. Arleo have co-counseled at least 23 other cases together and Mr. Arleo represented Mr. Horn in another case. From this, the Court found that it is reasonable to assume that Mr. Arleo knows Mr. Horn well; that Mr. Arleo knows confidential matters about Mr. Horn, including his method of handling an FDCPA class action and his settlement methods and techniques; and that Mr. Arleo possesses confidential relevant information about Mr. Horn's likes, dislikes, strengths, and weaknesses.

From these premises, the Court concluded that Mr. Arleo is in a position to use privileged information in support of his client and against the interests of the plaintiff class. And that means that if Mr. Arleo remains as co-counsel for the defendant, he will have an opportunity to use this privileged information in the future negotiation of a class notice, future possible objection hearings, future settlement procedures, and a possible future trial. For these reasons, the Court removed Mr. Arleo from this case in order to prevent the possibility that these future events will be tainted by Mr. Arleo's presumed possession and use of confidential information gleaned from his extensive prior business relationship with Mr. Horn. (ECF #56 at 13-14). Critically, the Court noted that *if* the method of class notice had been valid and the settlement had been approved, there would be no reason to remove Mr. Arleo because Mr. Arleo would no longer be in a position to

5

use the confidential information gained from his extensive prior business relationship with Mr. Horn, *i.e.*, "the close relationship between Horn and Arleo would not [be] relevant and could have been permitted." (ECF #56 at 11). This did not occur, the method of class notice used by the parties was held to be invalid, and the Court did not approve the settlement. Thus, the extensive prior business relationship between Mr. Horn and Mr. Arleo is extremely relevant.

With the Court's rationale fully fleshed out, a review of the cases relied upon by Defendant makes clear that Mr. Arleo misunderstands what is at issue. The first case Defendant claims the Court ignored is *Allegaert v. Perot*, 565 F.2d 246 (2d Cir. 1977). *Allegaert* is irrelevant in a case like this, in which an attorney possesses confidential information about an adversary's litigation techniques based on a prior extensive business relationship. *Allegaert* instead examined if an attorney disqualification is warranted where there is no substantial attorney-client relationship. *Id.* at 250-51. Here, whether a substantial attorney-client relationship exists is irrelevant. What is relevant is the *extensive prior business relationship* between Mr. Horn and Mr. Arleo.

Defendant next cites to *Fund of Funds v. Arthur Anderson & Co.*, 567 F.2d 225 (2d Cir. 1977), for the proposition that if the Court here had applied the irrelevant cases now cited by Defendant, it could not have reached the result it reached in removing Mr. Arleo from the case. But the Court did in fact cite to the *Fund of Funds* case on page 13 of its Order for the exact same reason cited by

6

Defendant. And as discussed below, *Fund of Funds* actually supports this Court's decision.

Defendant next cites *W.T. Grant v. Haines*, 531 F.2d 671 (2d Cir. 1976) for the proposition that no disqualification was required due to an attorney's alleged communication with a represented party. It is unclear to Mr. Sejour why Defendant refers to this case as there are no allegations here that Mr. Arleo communicated with a represented party. Defendant cites *Ceramco, Inc. v. Lee Pharmaceuticals*, 510 F.2d 268 (2d Cir. 1975), for essentially the same proposition, but it is equally irrelevant to the situation here.

Finally, Defendant cites two cases – *In re Austrian and German Bank Holocaust Litig.*, 317 F.2d 91 (2d Cir. 2003), and *In re Agent Orange Product Liability Litig.*, 800 F.2d 14 (2d Cir. 1986) – as support for its assertion that the Court (1) overlooked controlling precedent concerning attempts to disqualify counsel in class action litigation, and (2) traditional rules applicable to an attorney's client representation outside of the class action context cannot be mechanically applied to problems that may arise in the class action settlement context. Defendant provides no context for the selective quotations it uses, fails to explain why or how the rules are or should be different in the class action context, and fails to explain why such differences would even matter in this case. In the end, Defendant is taking wild shots in the dark and hoping something sticks.

The cases and ethical canons that do stick, are the ones cited by the Court, including Canons 5 and 9 of the New York Lawyer's Code of Professional

7

Responsibility, and with which the Defendant fails to even attempt to engage and distinguish. For example, in *Filippi v. Elmont Union Free School Dist. Bd. of Ed.*, 722 F. Supp. 2d 295 (E.D.N.Y. 2010), the defendant Board of Education moved to disqualify one of plaintiff's law firms because an associate at the firm had also served as Vice-President of the defendant Board of Education at the time the alleged incident occurred. *Id.* at 298-99. Judge Bianco found that it was reasonable to conclude – as here – that the attorney "might have acquired confidential information as a result of her membership of the Board and position as its Vice President." *Id.* at 307. As with Mr. Arleo, who has and had an extensive business relationship with Mr. Horn – having co-counseled at least 23 class actions together – the Court found it reasonable to conclude that the attorney possessed confidential, relevant information. *Id.*; *see also Fund of Funds,* 567 F.2d at 236 ("Even the most rigorous self-discipline might not prevent a lawyer from unconsciously using or manipulating a confidence acquired in the earlier representation and transforming it to telling advantage in the subsequent litigation..... The dynamics of litigation are far too subtle, the attorney's role in that process is far too critical, and the public's interest in the outcome is far too great to leave room for even the slightest doubt concerning the ethical propriety of a lawyer's representation in a given case.").

### b. There was no manifest injustice

Defendant also asserts that the Court has "unjustly and unreasonably denied the Defendant of its right to choose legal counsel" and has therefore caused a manifest injustice. Deft. Mem. of Law at 4. Defendant fails to point to any case law

8

defining "manifest injustice," but authority from this district and others suggests that the standard is an extraordinarily high one. *See, e.g., Max's Seafood Cafe, by Lou–Ann, Inc. v. Quinteros*, 176 F.3d 669, 678 (3d Cir. 1999) (finding manifest injustice where it was factual impossibility for a defendant to have been directly liable, but was nonetheless held liable); *Idowu v. Middleton*, No. 12 Civ. 1238, 2013 WL 371657, at *1 n.1 (S.D.N.Y. Jan. 31, 2013) ("In the context of a motion for reconsideration, 'manifest injustice' is defined as 'an error [committed by] the trial court that is direct, obvious, and observable.'") (citing *In re Oak Park Calabasas Condo. Ass'n*, 302 B.R. 682, 683 (Bankr. C.D. Cal. 2003) (citations omitted); *see also OGI Oceangate Transp. Co. Ltd. v. RP Logistics Pvt. Ltd.*, No. 06 Civ. 9441, 2007 WL 2900225, at *1 (S.D.N.Y. Oct. 4, 2007) (noting that "reconsideration is not warranted unless the prior decision is dead wrong."); *Pacific Coast Federation of Fishermen's Ass'n v. Locke*, No. C 10–04790, 2011 WL 289927, at *2 (N.D. Cal. Jan. 27, 2011) (citing *In re Oak Park Calabasas Condo Ass'n*).

Here, there is no manifest injustice in depriving Defendant of Mr. Arleo's counsel. Such an error is not "direct, obvious, and observable." In fact, it is not an error at all; it is a conclusion compelled by careful reasoning based on the facts of this case and relevant precedent. Defendant lists several reasons why it is unfair for Mr. Arleo to be removed from this case, but either the Court took these factors into consideration in its Order or Defendant is improperly advancing new facts and theories in violation of the law of this district. *SEC v. iShopNoMarkup.com, Inc.*, No. 04 CV 4057, 2013 WL 132652, at *4 (E.D.N.Y. Jan. 10, 2013) (in a motion for

9

reconsideration, "[a] party may not advance new facts, issues, or arguments not previously presented to the Court"). Moreover, for no reason other than make an unfair and derogatory comment about Mr. Bromberg – as Mr. Arleo has repeatedly done in this litigation – Defendant discusses a separate case in which Mr. Horn and Mr. Arleo represented the plaintiff and the class and Mr. Bromberg represented an objector. Mr. Arleo falsely states that the defendant in that case eventually "caved into Bromberg's desire to file useless 'micro' class actions based upon the same FDCPA claims." Deft. Mem. of Law at 7. This irrelevant and derogatory comment is not becoming to an attorney practicing in the Eastern District of New York.

### IV.     Defendant is ably represented by current counsel

Finally, the Defendant will not be prejudiced by the removal of Mr. Arleo because Mr. Arleo was replaced with two able attorneys. After the Court ordered Mr. Arleo to withdraw from this case as counsel for Defendant Rubin & Rothman, Thomas A. Leghorn, Esq. and Joseph L. Francoeur, Esq. entered appearances for Defendant. Mr. Leghorn and Mr. Francoeur are both attorneys at Wilson Elser Moskowitz Edelman & Dicker LLP, a large law firm. Mr. Leghorn, according to Wilson Elser's website, is a member of the firm's Executive Committee and Operations Group, serves as the deputy managing partner of the New York Metropolitan region, and focuses on defending professional liability claims against lawyers and on intellectual property litigation. *See* http://www.wilsonelser.com/attorneys/thomas_a_leghorn. Further, Mr. Leghorn is co-chair of Wilson Elser's Lawyers' Liability practice.

As can be confirmed by a simple Westlaw search, Mr. Leghorn has extensive experience defending both individual and class actions brought under the FDCPA by Mr. Bromberg and others. Though Mr. Leghorn may not have the "special experience" cited by Mr. Arleo in his attack on Mr. Bromberg, Mr. Arleo's "special experience" has no basis in reality and Mr. Arleo has not presented any persuasive reasons why Defendant would not be competently represented instead by Mr. Leghorn and Mr. Francoeur.

## V. Conclusion

It is abundantly clear that Defendant has not even met the minimum standard for the Court to grant its motion for reconsideration. It has not pointed to any clear error, any controlling relevant decisions the Court overlooked, or any manifest injustice. Defendant's motion is patently frivolous and contains irrelevant and derogatory comments directed at Mr. Sejour's counsel. All Defendant seeks to do is relitigate the same battle it already lost by improperly advancing new theories and facts. The Court should respectfully deny Defendant's motion.

Dated: New York, New York
February 26, 2013

/s/ Michael N. Litrownik
Michael N. Litrownik