UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOHN T. CORPAC, an individual;    )
on behalf of himself    )
and all others similarly situated,    )No. 10-CV-4165 (ADS)(ETB)
    )
    Plaintiff,    )
    )
    v.    )
    )
RUBIN & ROTHMAN, LLC, a New York    )
Limited Liability Company; and    )
JOHN AND JANE DOES    )
NUMBERS 1 THROUGH 25,    )
    )
    Defendants.    )

Amended Memorandum of Law in Support of
Patrick Sejour's Objections

Respectfully Submitted,

Brian L. Bromberg
Bromberg Law Office, P.C.
40 Exchange Place, Suite 2010
New York, NY 10005
Tel: (212) 248-7906
Fax: (212) 248-7908

Matthew Schedler
CAMBA Legal Services,
Consumer Law Project
885 Flatbush Ave, 2nd Floor
Brooklyn, NY 11226
Tel: (718) 940-6311 (x79284)
Fax: (718) 462-5537

# Table of Contents

Statement of Facts ................................................................................. 1

Argument ............................................................................................. 5

   I.    The settlement is both procedurally and substantively
          unfair and inadequate ................................................................. 5

       a.  The settlement is substantively unfair ................................... 9

       b.  Stage, proceedings, and amount of discovery ....................... 10

       c.  The range and reasonableness of the recovery in light of the
           best possible recovery ...................................................... 11

       d.  The proposed class notice is not sufficient ........................... 16

   II.    Mr. Horn is not adequate for the purposes of Rules 23(a)(4) and 23(g).... 18

   III.   The class action fails to satisfy the superiority
          requirement of Rule 23(b)(3) .......................................................... 21

   IV.   The settlement is not procedurally fair ............................................ 22

   V.    This settlement requires heightened scrutiny because of the timing of the
          settlement and because the terms of the settlement raise questions of
          self-dealing ................................................................................. 23

Conclusion ............................................................................................ 25

## Statement of Facts

This class action, brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, alleges that Rubin & Rothman LLC ("R&R"), a law firm, sent debt collection letters, summonses, and complaints to the class members that contained misrepresentations and were not properly reviewed by the attorneys who signed them. In other words, R&R attorneys allegedly signed off on letters and summonses and complaints without ever looking at the underlying files or records to see if the information they were signing off on was true and accurate. These are serious allegations and would be serious violations under federal and state laws.

Attorneys who sign summonses and complaints have an important ethical obligation to ensure that what they are attesting to is true and accurate. *In re Bratkovsky*, 99 A.D.3d 79 (2d Dept. 2012) (deciding professional responsibility violations under predecessor to Model Rules). A derogation of this ethical duty risks substantial legal penalties and places at risk the attorney's ability to practice law. *See* New York Judiciary Law § 487; *In re Bratkovsky*, at 100; New York Rules of Professional Conduct 8.4c; *Diaz v. Portfolio Recovery Associates*, No. 10-CV-3920, 2012 WL 1882976, at *4-5 (E.D.N.Y. May 24, 2012) (finding an allegation of a law firm's "broad pattern of deceptive filings" in debt collection cases sufficient to sustain a claim under N.Y. Jud. Law § 487); *Sykes v. Mel S. Harris & Assoc. LLC*, 757 F. Supp. 2d 413, 428-29 (S.D.N.Y. 2010) (sustaining civil RICO claim against debt collectors, law firm, and process server for securing fraudulent default

judgments); *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292 (2d Cir. 2003); *Miller v. Upton, Cohen & Slamowitz*, 687 F. Supp. 2d 86 (E.D.N.Y. 2009); *LVNV Funding LLC v. Guest*, 35 Misc.3d 1232(A) (City Ct. Mount Vernon 2012).

Without any merits discovery, the parties moved for preliminary approval of a class settlement in January 2012. The proposed settlement agreement provided that the claims of the class members would be settled with the following essential terms: (a) $3,500 in damages as an incentive award to the class representative, (b) up to $75,000 in attorney's fees for class counsel, William Horn, Esq., and (c) $9,400 in a *cy pres* award made to a consumer law non-profit. The $9,400 was arrived at because this is allegedly 1% of R&R's net worth, and, if true, would be the maximum recovery for statutory damages under the FDCPA for a class action. The settlement agreement did not provide for any money to be distributed to class members. In exchange for this relief, class members who did not opt out of the settlement would waive all claims, state and federal, relating to Defendant's use of any written communications, including legal pleadings. ECF #22 at 12. Notice of the settlement was made by one-time publication in a weekday edition of the *New York Post*.

In June of 2012, Patrick Sejour, a class member, filed an objection to the settlement through his attorneys, a non-profit legal service provider and a private consumer attorney. Mr. Sejour objected to numerous aspects of the settlement. Specifically, Mr. Sejour raised objections to the class notice, the fairness of the settlement, the scope of the release, ambiguities regarding the class size and net

worth of the Defendant, and an apparent conflict of interest between counsel for the Plaintiff and counsel for the Defendant. ECF #27. Mr. Sejour presented these objections at the fairness hearing at which time the Court ordered that the Defendant submit net worth information under seal and requested further briefing on the issue of class counsel's conflict, and the fairness of the settlement.

In response to this briefing the Court issued an Order on January 24, 2013 removing Robert Arleo, Esq., the Defendant's counsel, from the case because of the conflict between him and William Horn, Esq., the Plaintiff's counsel. The Court also ruled that the class notice was insufficient and that the parties must re-notice the class and ensure that each of the class members receives individualized notice. The January 24, 2013 order did not address Mr. Sejour's fairness objections; however, the Court recognized that, as the class was to be re-noticed, there was a strong possibility that the terms of the settlement could change.

The parties are now seeking judicial approval of a new settlement that unfortunately contains all of the same flaws as the prior settlement. The new settlement is as unfair as the prior one because the settlement's most important terms remain unchanged. Indeed, the parties have altered the settlement in only three significant ways. First, Mr. Horn is to receive an extra $50,000 in attorney fees. Second, the class definition has been modified to exclude putative class members of *De La Paz v. Rubin & Rothman, LLC*, Case No. 11-cv-09625 Southern District of New York and *Tito v. Rubin & Rothman, LLC*, Case No. 12-cv-3464 Eastern District of New York, class actions that involved attempts by R&R to collect

3

auto loans. And, third, the settlement no longer covers every written communication sent by R&R, but instead only those attached as Exhibits A through F to the Amended Complaint. But this change is illusory because the exhibits attached to the Amended Complaint encompass a variety of letters as well as every summons and complaint filed by R&R. Accordingly, this change is not a substantial limitation of the subject matter of the suit. The breadth of the written materials covered under the settlement is reinforced by the class size of approximately 255,000 members.

Because the most important terms of the settlement remain unchanged, the settlement is still unfair and deficient: 255,000 consumers will waive *every possible claim* under *every single federal and state law* arising from hundreds of thousands of written communications from R&R, and in exchange for this broadest possible release of claims, the class members will still receive *nothing*. And instead of covering only those class members who were sent communications within one year before the filing of the initial complaint, the settlement destroys the rights of class members going back *four years* from the date of the settlement, without payment of any additional consideration. The lack of recovery for the class is contrasted by the recovery to Mr. Horn, who will receive up to $125,000 in attorneys' fees under the new agreement, an increase of $50,000 over the last settlement. Moreover, the notice of settlement – while being sent to individuals – is still defective because it fails the most basic and important requirement for class notice, *i.e.*, it does not inform class members what rights they give up if they fail to opt out.

This settlement presents all the hallmarks of a deficient settlement under Rule 23: the class recovers nothing while class counsel, Mr. Horn, receives up to $125,000, and R&R is protected from extensive potential future legal liability. Compounding this bad settlement is ineffective and insufficient notice which fails to inform class members of their rights. Simply put, this settlement contains the same substantive defects as the prior settlement, and objector, Patrick Sejour, respectfully requests that this Court strike the proposed settlement as unfair and inadequate and find Mr. Horn to be inadequate class counsel.

## Argument

### I.  The settlement is both procedurally and substantively unfair and inadequate

It is axiomatic that the purpose of litigation is to seek a remedy for a right that has been violated. The settlement here runs contrary to this purpose and provides nothing to the hundreds of thousands of class members whose rights have allegedly been violated. The class members receive no monetary or injunctive relief from the settlement. Instead, the representative plaintiff receives $3,500, a non-profit gets $9,400, and class counsel gets up to $125,000. In exchange for this relief, the class members waive not only their claims under the FDCPA, but also any other claim they may have, known or unknown, under state and federal law. This exceptionally broad release is matched by an exceptionally broad class definition. The parties define a class member as any person who has ever been sent any of the seven types of written communications attached to the complaint from September 2009 through the present. This includes not just a variety of letters from R&R, but

also every summons and complaint R&R has filed over a four-year period. R&R's relief is therefore of several orders of magnitude greater than that of the class members. R&R is immunized from *all* legal liability for virtually anything it may have sent the class members over a period of four years. As discussed below, the class members here have numerous additional claims other than the one under the FDCPA for R&R's written communications at issue. This relief for R&R is therefore extremely valuable.

Mr. Horn has previously argued that this settlement is fair because it provides the maximum award possible under the FDCPA. The FDCPA permits a maximum damages award in a class action of the lesser of $500,000 or 1% of the net worth of the debt collector. 15 U.S.C. § 1692k(a)(2)(B). According to the parties, 1% of R&R's net worth is $9,400. But this argument only recognizes what is gained and fails to address what class counsel was forced to give up to obtain this award. In order to secure this $9,400 in relief, Mr. Horn waived all claims state and federal for 255,000 class members.

In other words, the class members are waiving every claim under the sun in exchange for an award obtained under only one federal statute, and limited by that statute to a recovery of the lesser of $500,000 or 1% of the net worth of the defendant. In addition, the parties have defined the class in the broadest possible terms as anyone in New York who has received any of seven different types of communications from R&R from September 2009 through the present. Any argument that the settlement is fair because the class members will receive the

maximum under the FDCPA misses the point. The additional claims arising out of these written communications from R&R that could have been brought, but were not – including claims under RICO, New York General Business Law § 349 and New York Judiciary Law § 487. *C.f. Sykes v. Mel S. Harris & Assoc. LLC*, 757 F. Supp. 2d 413 (S.D.N.Y. 2010) (Civil RICO and other claims brought); *Diaz v. Portfolio Recovery Associates*, No. 10-CV-3920, 2012 WL 1882976 (E.D.N.Y. May 24, 2012). These additional claims are valuable because damages under these acts are not limited by statute or, in the case of New York General Business Law §349, provide for minimum damages. There is no indication that class counsel considered pursuing any of these claims, as is required by Rule 23(g)(1)(A)(i), regardless of whether these claims would ultimately succeed. For class members to waive them and any possible others for $9,400 – *which they will not receive* – is on its face unfair. Moreover, no additional consideration is being paid by R&R in exchange for Plaintiff's waiving *four years'* worth of claims, instead of those claims that fall within the FDCPA's one-year statute of limitations.

There is no better illustration of the deficiency of the settlement than the proposed class settlement in *De La Paz v. Rubin & Rothman*, one of the two cases that are carved out from the settlement. Like this action, *De La Paz* is a class action that concerns R&R's failure to meaningfully review pleadings, though it is limited to pleadings submitted in auto fraud cases in which Capital One Auto Finance is the plaintiff. *See* copy of the complaint in *De La Paz v. Rubin & Rothman, LLC*, Case No. 11-cv-09625 Southern District of New York, attached as <u>Exhibit 1</u> (ECF#

80-1) to the Declaration of Matthew Schedler, Esq. (ECF# 80, the "Schedler Declaration"), dated May 10, 2013. In addition to failing to meaningfully review the pleadings, the complaint in *De La Paz* also alleges that R&R filed false affidavits of merits in support of default judgments, that R&R's complaints are deceptive because they falsely state that Capital One Auto Finance is not required to be licensed by the NYC Department of Consumer Affairs, and that R&R actions violated Judiciary Law § 487. *Id.* In April 2013, R&R and the attorneys for the Plaintiff settled *De La Paz* as follows: the 1,576 class members in the action will receive claim form notice of the settlement, and participating class members will receive a *pro rata* share – up to $1,000 – of the $60,000 settlement fund. In other words, every class member in *De La Paz* who returns their claim form will receive monetary compensation, for a cause of action substantially similar to the one asserted here. *See* copy of the settlement agreement for *De La Paz v. Rubin & Rothman, LLC*, attached as <u>Exhibit 2</u> (ECF# 80-2) to the Schedler Declaration.

Additionally, the *De La Paz* settlement notes that R&R's net worth is not the $940,000 represented by the parties to the Court here, but instead, $2.5 million. This substantial discrepancy highlights the need for Mr. Horn to have conducted some discovery before agreeing to the renegotiated settlement, which was presumably entered into while the settlement discussions in *De La Paz* were well under way. Mr. Horn owes the 255,000 class members in this action a fiduciary obligation and is tasked with ensuring they receive the maximum recovery possible. As argued below, Mr. Horn has not satisfied these responsibilities and the *De La*

*Paz* settlement shows these failings, namely: that no meaningful recovery was received by the class, and no investigation into the potential damages has been performed by Mr. Horn in advance of either the initial settlement or the new proposed settlement.

The reason the settlement here is so problematic is perfectly highlighted by *De La Paz.* Here, as there, the claims that are encompassed in this suit are valuable and, when carefully investigated by competent class counsel and combined with other claims, should result in money going to class members. Instead, no money will be awarded to class members and any possibility of pursuing more valuable relief for the class members will be forever foreclosed by the universal waiver provision, which R&R has already tried to employ to freeze class actions against it. *See* copy of the letter from R&R's in *Tito v. Rubin & Rothman, LLC*, Case No. 12-cv-3464 Eastern District of New York, seeking a stay of that proceeding attached as <u>Exhibit 3</u> (ECF# 80-3) to the Schedler Declaration.

### a.  The settlement is substantively unfair

The substantive fairness of a class action settlement is measured by the nine *Grinnell* factors, which include (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best

9

possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *City of Detroit v. Grinnell*, 495 F.2d 448, 462 (2d Cir. 1974). Because individualized notice of the settlement has not been sent out it is not possible to know how the class will react to the settlement. Nonetheless, the *Grinnell* analysis counsels a finding that the settlement is substantively unfair.

### b.  Stage, proceedings, and amount of discovery

This matter was settled before the parties exchanged any discovery. There is no evidence on the record that the parties exchanged Rule 26(a)(1) automatic disclosures, conducted a Rule 26(f) planning meeting, appeared before the Court for a Rule 16 initial conference, or filed a proposed discovery plan. This failure infects the analysis of virtually every other *Grinnell* factor. Because class counsel undertook no merits discovery, they are unable to apprise the Court of the strengths and weaknesses of the liability claims (Factor 4), and the Court is unable to properly assess those strengths and weaknesses. The same is true for the strengths and weaknesses of establishing damages (Factor 5). Likewise, an evaluation of the complexity, expense, and likely duration of the litigation (Factor 1) depends on the evidence of liability and damages obtained by class counsel through discovery; the task of proving the case at trial could be exceptionally difficult, exceptionally easy, or anywhere in between. Without any discovery, it is impossible for Mr. Horn to know the extent of, or the potential value of, the violations alleged without relying solely on R&R's representations. If R&R attorneys indeed failed to review any of the

complaints it sent to the class members before filing them with the court – as alleged in the First Amended Complaint, *see, e.g.*, ¶¶ 36, 44, 53, 63, 73, and 99 of the First Amended Complaint (ECF #5) – the class members would have valuable claims under New York's General Business Law § 349, New York State Judiciary Law §487 or, perhaps, even civil RICO. *See Diaz v. Portfolio Recovery Associates*, No. 10-CV-3920, 2012 WL 1882976, at *4-5 (E.D.N.Y. May 24, 2012) (finding an allegation of a law firm's "broad pattern of deceptive filings" in debt collection cases sufficient to sustain a claim under N.Y. Jud. Law § 487); *Sykes v. Mel S. Harris & Assoc. LLC*, 757 F. Supp. 2d 413, 428-29 (S.D.N.Y. 2010) (sustaining civil RICO claim against debt collectors, law firm, and process server for securing fraudulent default judgments).

For this reason, courts have identified the failure to exchange discovery as a red flag indicating that the settlement was made without consideration for the potential value of the class members' potential claims. *Wilson v. Directbuy, Inc.*, at *5; *Plummer v. Chemical Bank*, 668 F.2d 654 (2d Cir. 1982). Mr. Horn had an imperative to discover and ascertain the extent of R&R's wrongdoing if he is going to release *all* of the class member's claims for that wrongdoing. *See Wilson*, 2011 WL 2050537, at *5. Because it appears that Mr. Horn failed in this regard, the Court cannot presume that this settlement is fair and must scrutinize it closely. *Id.*

### c. The range and reasonableness of the recovery in light of the best possible recovery

Previously, Mr. Horn has argued that the class action is fair because class members obtained an award of 1% of R&R's alleged net worth and that because this

11

is the maximum allowed under the FDCPA, Mr. Horn could not have obtained a better result. While 1% may be the maximum statutory class damages available under the FDCPA, this is certainly not the maximum recovery possible. Because the class members waived so many additional claims, the actual maximum recovery is likely far greater.

The fact pattern at issue in this action, the failure of a debt collector to conduct meaningful attorney review of its written communications, gives rise to a number of valuable claims. As discussed above, if R&R failed to review summonses and complaints before filing them and serving them on the class members – as is alleged in the First Amended Complaint – class members would have claims under New York General Business Law §349, RICO, and New York Judiciary Law § 487. These claims are worth far more than the amount recovered here, as both RICO and New York Judiciary Law § 487 claims allow for uncapped treble damages while GBL § 349 has minimum damages that would ensure each class member received some recovery. *See* RICO, 18 U.S.C. § 1964(c) (treble damages); N.Y. Jud. Law § 487 (treble damages in a civil action); N.Y. G.B.L. § 349(h) ($50 minimum damages). As the recent *Sykes* and *Diaz* decisions demonstrate, claims other than those under the FDCPA may be sustained against debt collection law firms that fail to review summonses and complaints and these other claims, which permit minimum recovery and treble damages, are valuable. Indeed, blanket immunity for these other claims is likely worth far more than R&R's financial exposure on the FDCPA claim.

The settlement in *De La Paz* leaves no question that this settlement is unreasonable. There, a 1,576 person class, based on largely the same claims at issue here, was provided superior notice and will receive a recovery over six times greater than the 255,000 class members in this action will receive. There can be no argument that the recovery for the class members here is reasonable, when a similar class action with 253,424 fewer class members receives a substantially larger benefit. Moreover, the fact that R&R was recently sanctioned in Mount Vernon City Court and ordered to pay $10,000 into the New York Lawyer's Fund for Client Protection demonstrates that there is strong evidence that these causes of action could be sustained against R&R. *LVNV Funding LLC v. Guest*, 35 Misc.3d 1232(A) (City Ct. Mount Vernon 2012). In *LVNV Funding v. Guest*, the Court sanctioned R&R for, among other things, failing to review their pleadings, a violation similar to those alleged in *Sykes* and *Diaz*, and one that creates liability under the statutes cited above.

It is unclear from the record what reason motivated class counsel to agree to such an expansive class definition. Mr. Horn was under no obligation to draw the class so broadly, *see Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 341 (7th Cir. 1997) ("We note first that we know of no authority requiring the participation of the broadest possible class. On the contrary, the class requirements found in the Federal Rules of Civil Procedure encourage rather specific and limited classes.") (citing Fed. R. Civ. P. 23), and could have easily limited the class to those members who received one of the letters attached to the complaint in order to provide the

13

class members with the greatest relief. Other than providing immunity from future lawsuits and counter-claims to R&R, there was no reason to expand the class to include individuals who were sued by R&R.

When a broadly defined class receives no compensation in exchange for a release of all claims, such settlements are substantively unfair. *See True v. American Honda Fin. Corp.*, 749 F. Supp. 2d 1052 (C.D. Cal. 2010) (Class action that awarded a coupon of suspect value in exchange for a total release of claims was unfair and settlement was rejected); *Wilson v. Directbuy, Inc.*, 2011 WL 2050537 (D. Conn. May 16, 2011) (Class action that awarded a two months of a club membership in exchange for waiving every claim based on an allegation in the complaint was unfair and the settlement was rejected); *Karvaly v. Ebay*, 245 F.R.D. 71 (E.D.N.Y. 2007) (Class action that defined the class too broadly, included a broad release of claims, and only provided publication by notice could not be certified).

Recently, in *Felix v. Northstar,* No. 11-CV-166, ___ F.R.D. ___, 2013 WL 2319326 (W.D.N.Y. May 28, 2013),  the Western District of New York conducted this fairness analysis in an FDCPA class action settlement with many of the same defects as at issue here. . In *Felix*, Mr. Horn, class counsel, and Robert Arleo, the former defense counsel here, brought a class action under the FDCPA and the California Rosenthal Fair Debt Collection Practices Act based on a debt collectors failure to convey various identifying information during phone calls to consumers. Mr. Horn and Mr. Arleo proposed a class settlement requiring the defendant's to pay $129,238.58 distributed as follows: $6,000 to the two named plaintiffs, a

14

$38,825.72 *cy pres* award and a $19,412.86 *cy pres* award made to one or more national charitable organizations, and $65,000 in attorney fees. The defendants also agreed to injunctive relief, promising to use their "best efforts" to ensure that when communicating with debtors they identify themselves, disclose the communication is from a debt collector, disclose the communication concerns the collection of a debt, and advise callers in telephonic communications that the call may be recorded. In exchange for this, class members waived only class claims, retaining their rights to file individual actions against Northstar. Only the named plaintiffs received notice of the settlement and absent class members were not permitted to opt out.

In evaluating the settlement, Magistrate Judge Jeremiah J. McCarthy, to whose jurisdiction the parties had consented, found numerous defects that prevented its approval, including that the settlement was unfair. In describing the unfairness of the settlement, Judge McCarthy highlights the same concerns Mr. Sejour has identified here, specifically, that class members receive no money whatsoever in exchange for granting Northstar and its affiliates a broad release. *Felix,* 2013 WL 2319326, at *11-12. Moreover, the relief in *Felix,* is many magnitudes greater than the relief here, as absent class members here do not retain any individual claims, receive no injunctive relief, and far less money is distributed as *cy pres.*

Like the settlements discussed above, the settlement here is a textbook example of an extremely broadly defined class receiving no compensation in exchange for an extremely broad release of all of their claims. Accordingly, it fails

this prong.

It appears that R&R's net worth is an open question. As explained above, R&R has just settled a class action in which it represented that its net worth is approximately $2.5 million, instead of the $940,000 represented to this Court. This new information from the *De La Paz* settlement throws into doubt the accuracy of the net worth documents filed here under seal and provides grounds for making these documents part of the public record. Furthermore, the failure the properly ascertain the net worth of the defendant, throws into doubt Mr. Horn's adequacy as class counsel.

Finally, the parties have repeatedly asserted that Mr. Sejour's attorneys' wish is to carve this case up into "micro-classes" and that this would not benefit the class members. But the fact that R&R has carved out a class of 1,576 members in *De La Paz* and obtained a recovery *to the class members themselves* of $60,000 in exchange for a *limited* release, shows that not only can FDCPA settlements be tailored to benefit a small group of consumers, but that this is the preferable way to settle a case with a relatively low cap on statutory damages. In other words, when faced with a low maximum class recovery, rather than giving the money away to a charity, a consumer advocate should seek to maximize the recovery to the class members by keeping the class small and focused, while minimizing the scope of the release of the absent class members.

### d.  The proposed class notice is not sufficient.

In response to the prior decision in this action, the parties agreed to re-notice

the class and provide individualized notice to each class member. The parties agreed that the best practicable notice would be individualized postcard notice. This new notice proposed by the parties is substantially flawed and fails to alert class members to the most important aspect of the settlement, *i.e.*, that all claims, state and federal, based on any of the written communications attached to the complaint are waived if class members fail to opt out. Instead, the notice only informs class members that by doing nothing, "you will remain a member of the class and you will give up your right to sue Rubin and Rothman separately about the claims raised in the suit." This description of the rights waived is incorrect. Class members not only waive their rights to sue R&R for claims raised in the lawsuit, but waive their right to sue R&R based on any claim under any statute, including those not mentioned in the lawsuit. ECF #70 at 13.

Notice is especially important in the FDCPA context, because class members often give up rights in exchange for little value and, therefore, must have an opportunity to preserve their rights. *Hecht v. United Collection Bureau*, 691 F.3d 218, (2d Cir. 2012); *see also Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344-45 (7th Cir. 1997). Here, this improper notice impacts the substantive and procedural fairness of the action because it fails to inform class members what rights they are giving up if they fail to opt out of the settlement.

When class notice fails to inform class members of the rights waived in a class action settlement, the settlement is deficient and cannot stand. *National Super Spuds, Inc. v. New York Mercantile Exchange*, 660 F.2d 9 (2d Cir. 1981). In

*National Super Spuds*, the Court rejected a class action settlement where the notice failed to specifically alert one category of claimant – holders of unliquidated potato futures contracts – that these claims "were being placed being placed on the block although these class members were to receive nothing in return." *Id.* at 16. Class members could access this information only by reading the settlement, which the notice advised them to do. *Id.* at 14.

The parallels between *National Super Spuds* and this case are notable. The proposed notice in this action alerts class members of their waiver of claims only in the following manner, "by doing nothing you will remain a member of the class and you will give up your right to sue Rubin and Rothman separately about the claims raised in the suit." This language fails to inform class members of the rights they are actually waiving. Class members do not just waive their right to sue R&R about claims made in the suit, but waive their ability to sue R&R about any claim whether it is raised in the suit or not. Because the class notice fails to fairly apprise class members of the terms of the proposed settlement it is deficient and the settlement should be rejected. *Grunin v. Int'l House of Pancakes*, 513 F.2d, 114, 122 (8th Cir. 1975) cert. denied, 423 U.S. 864 (1975).

## II.   Mr. Horn is not adequate for the purposes of Rules 23(a)(4) and 23(g)

Rules 23(a)(4), and Rule 23(g)(1)(B) and (C) codify the long-established rule that class counsel must be adequate and free from conflict. These rules exist to address the risk that class counsel will sell out the class by agreeing to a settlement that provides meager recovery in exchange for attorney's fees. *See Creative Montessori Learning Center v. Ashford Gear, LLC*, 662 F.3d 913, 918 (7th Cir.

18

2011). This risk is especially high in consumer class actions because the class members ordinarily lack the monetary stake or legal sophistication to monitor class counsel, resulting in an enhanced fiduciary obligation for attorneys bringing those cases. *Id.* at 917; *In re Cedent Corp. Securities Litigation*, 404 F.3d 173, 186-187 (3d Cir. 2005).

As discussed above, the settlement here is unfair to the class members and has all the hallmarks of an agreement in which the attorneys' interests were indulged at the expense of the class. Class members are not properly apprised of their rights, no discovery appears to have been conducted, the class was drawn as expansively as possible, the release was far broader than it should have been and covered claims not even investigated or brought by class counsel, and class members received no monetary recovery in exchange for releasing all of their claims.

In exchange, Mr. Horn will receive up to $125,000 and R&R will be insulated from expensive and potentially financially crippling future litigation. Mr. Horn has demonstrated that he is inadequate counsel by (a) failing to conduct extensive merits based discovery into the claims of the class members and into R&R's net worth (b) ignoring all of the substantive criticism of the settlement offered by Mr. Sejour's attorneys, and (c) ignoring the lessons of the plaintiff's attorneys in the *De La Paz* settlement as to how to structure a fair and adequate FDCPA class-action settlement. What is more, these concerns are echoed in *Felix*. Specifically, Judge McCarthy suggested that Mr. Horn had something to hide from absent class

members who were to receive "If not nothing, then close to it" in exchange for an "ethereal benefit", while giving up potentially valuable rights. *Felix*, 2013 WL 2319326, at *11-12.

So incensed was the Court in *Felix* at the settlement and, more particularly, at the failure of Mr. Horn and Mr. Arleo to discuss two recent binding precedents that undercut their no-notice, no-opt-out, injunctive-relief only settlement, that she ordered them *sua sponte* to show cause why they should not be sanctioned for violating New York's ethical rules.

At the very least, Mr. Horn's repeated attempts to offer questionable class settlements – that provide no tangible benefit to the class members – to  the courts, and the absent class members, raise a bona fide issue as to whether Mr. Horn is adequate class counsel. The problems with Mr. Horn's proposed settlements have now been recognized by the Second Circuit and by the judges in the district courts in this state. Failure by Mr. Horn to address these problems or amend his settlements demonstrates a pattern of elevating his own self-interest above the interests of absent class members.

In *Creative Montessori*, the Seventh Circuit warned against consumer class actions where the deal provides generous compensation for the lawyers but no benefit to the class members. *Creative Montessori* , 662 F.3d at 918. If the original settlement in this action highlights those concerns, then the *Felix* decision along with the new proposed settlement confirms them. In this new agreement class counsel will receive an extra $50,000 for putting forth a settlement that has the

same substantive defects as the prior settlement. This award then, in exchange for no increase in class compensation even in the face of substantial questions about the Defendant's net worth as well as the value of the case, puts into doubt class counsel's ability to fairly and adequately represent the class as required by Rules 23(a)(4) and 23(g).

### III.   The class action fails to satisfy the superiority requirement of Rule 23(b)(3).

In order for a class action to be maintained under Federal Rule of Civil Procedure 23(b)(3), the class action form must be superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to this finding include: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

This action fails to meet the requirements for superiority. The first superiority factor is an inquiry into whether individuals have an interest in controlling the prosecution or defense of a separate action. Even though the class here is made up of low-income consumers who may lack the resources to seek out an obtain representation, this alone does not tilt this factor in favor of the approval of

the settlement. The Court must also examine whether class members have brought litigation elsewhere. *Mazzei v. Money Store,* 288 F.R.D. 45 (S.D.N.Y. 2012). In this case, two class members have filed class actions related to the claims asserted here, Gina Tito and Hermelina De La Paz, the named plaintiffs in the two class actions that were exempted from the settlement. This is strong evidence that class members have an interest in filing separate and counsels against a finding that the class action here is superior. The settlement in *De La Paz* – a substantially better result than the settlement here – is important for the superiority analysis because it highlights that class members have not only have other options available to them, but that those option offer the chance at far greater relief than the settlement here. Indeed, one class member, bringing an individual suit with a claim for actual damages, could easily obtain more than the $9,400 the entire 255,000 person class is to receive here. Simply put, because class members have much better claims available to them, either through individual cases or different class actions, this settlement lack superiority and should be rejected.

III.   **The settlement is not procedurally fair**

The question of procedural fairness overlaps with the question of whether class counsel is adequate under Rules 23(a)(4) and 23(g). The same reasons that prevent Mr. Horn from being adequate counsel also prevent this settlement from being procedurally fair. In order to determine the procedural fairness of a settlement, the court must see if the settlement was "achieved through arms-length negotiations by counsel with the experience and ability to effectively represent the

class's interests." *Becher v. Long Island Lighting Co.,* 64 F. Supp. 2d 174, 178 (E.D.N.Y. 1999); *see also D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir. 2001). And the court "has the fiduciary responsibility of ensuring that the settlement is ... not a product of collusion, and that the class members' interests [were] represented adequately." *Clement v. American Honda Fin. Corp.,* 176 F.R.D. 15, 29 (D. Conn. 1997) (internal citations omitted). The terms of the settlement suggest that the interests of the class were sacrificed in exchange for the interests of the attorneys and as a result the settlement is not procedurally fair.

## IV. This settlement requires heightened scrutiny because of the timing of the settlement and because the terms of the settlement raise questions of self-dealing.

The settlement in this case deserves heightened scrutiny for two reasons. First, heightened scrutiny is necessary when a settlement is reached before class certification. *Alleyne v. Time Moving & Storage Inc.,* 264 F.R.D. 41, 54 (E.D.N.Y. 2010). This is required so that the court can make sure that there was not undue pressure on defendants or collusion. *Weinberger v. Kendrick*, 698 F.2d 61, 72 (2d Cir. 1982). Here, the notice of class settlement was filed on March 1, 2011 while the class certification motion was not made until January 16, 2012.

Heightened scrutiny is also required when there are signs that class counsel is pursuing their self-interest at the expense of the class. These signs include (1) whether class counsel receives attorneys' fees disproportionate to the class award, (2) the inclusion of a clear sailing provision in which the defendant agrees not to object to the award of attorneys' fees, and (3) a provision that all fees would not

revert back to the defendant. *In re Bluetooth Headsets Products Liability Litigation*, 654 F.3d 935, 947 (9th Cir. 2011). These signs are all present in this action. Here, (1) class counsel is receiving up to $125,000 in attorney fees – while class members receive no compensation; (2) the settlement agreement in section 2.3, paragraph c, includes a clear sailing provision; and (3) while there is no provision reverting fees to the defendant, the stipulation functions as if there were, as unpaid attorneys' fees will remain with the defendant and will not be distributed to the class.

Even if attorney fees are statutory under the FDCPA and Mr. Horn received the maximum award for the class, neither of these considerations defeat the requirement for heightened scrutiny under *Bluetooth*. It does not matter if attorney fees are statutory or negotiated, as in either case a bad actor class counsel can negotiate large fees in exchange for an overly broad or undercompensated class. The genesis of the fees plays no role in this consideration, and does not affect the applicability of the *Bluetooth* reasoning. Mr. Horn's suggestion that receiving the maximum benefit for the class forecloses the possibility of a self-dealing settlement takes too narrow a view, as discussed above. A bad actor class counsel can harm the class in spite of achieving the maximum recovery by, as here, including the waiver of a large number of claims in the settlement or define the class in a manner that is unnecessarily overbroad, including as many members as possible. Because the factors and considerations underpinning the *Bluetooth* ruling are present here, the court should view this case with heightened scrutiny.

24

## Conclusion

For the reasons stated above, this settlement is both procedurally and substantively unfair and inadequate. It was settled without any discovery being conducted and will wipe out valuable claims of hundreds of thousands of class members arising from all manner of communication – not just the letters at issue – R&R may have sent the class members in the last four years. Objector Patrick Sejour respectfully requests that the Court deny approval of this grossly unfair and inadequate settlement.

Dated:   June 14, 2013
      New York, New York

             /s/ Brian L. Bromberg
             Brian L. Bromberg

             /s/ Matthew Schedler
             Matthew A. Schedler

## Certificate of Service

I, Michael N. Litrownik, an attorney, hereby certify that on June 14, 2013, the foregoing documents were filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Eastern District of New York's Local Rules, and/or the Eastern District's Rules on Electronic Service upon the following parties and participants:

Joseph L Francoeur

Matthew Austin Schedler

Thomas A. Leghorn

William Franklin Horn

Dated:      New York, New York
            June 14, 2013

                              /s/ Brian L. Bromberg
                              Brian L. Bromberg

26