UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------- X
JOHN T. CORPAC, an individual; :
on behalf of himself and all others similarly situated, :
: No. 10-CV-4165 (ADS)(GRB)
Plaintiffs, :
v. :
:
RUBIN & ROTHMAN, LLC, a New York Limited Liability :
Company; and :
JOHN AND JANE DOES NUMBERS 1 THROUGH 25, :
:
Defendants. :
----------------------------------------------------------------- X

**Reply Memorandum of Law in Support of
Patrick Sejour's Objections**

Respectfully Submitted,

Brian L. Bromberg
Bromberg Law Office, P.C.
40 Exchange Place, Suite 2010
New York, NY 10005
Tel: (212) 248-7906
Fax: (212) 248-7908

Matthew Schedler
CAMBA Legal Services,
Consumer Law Project
885 Flatbush Avenue, 2nd Floor
Brooklyn, NY 11226
Tel: (718) 940-6311 (x79284)
Fax: (718) 462-5537

**Table of Contents**

Preliminary Statement………………………………………………………………………..1

Argument……………………………………………………………………………………….2

    I.       The objector's claims have not been previously rejected…………………………2

    II.      This settlement was negotiated in the absence of any meaningful discovery……..2

    III.     The settlement is substantively unfair because class members receive no recovery……………………………………………………………..…3

    IV.     The broad scope of the class release in this settlement is improper because the released claims were not adequately represented prior to settlement…………...…4

    V.      The proposed class notice is insufficient……………………………………….6

    VI.     Class counsel is not an adequate representative of class interests……………..…7

    VII.    Questions remain concerning Rubin & Rothman's net worth……………………8

    VIII.   The Parties' accusations against Objector's attorney, Brian L. Bromberg, of vexatious conduct are neither relevant nor properly before the Court…………….9

Conclusion……………………………………………………………………………………10

i

**Preliminary Statement**

This class action, brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, impacts the rights of hundreds of thousands of class members who allegedly suffered abusive debt-collection practices at the hand of defendant Rubin & Rothman, LLC ("R&R"). The Plaintiff and Defendant ("the Parties") have proposed a settlement that will deny class members any recovery – monetary or injunctive – while protecting the Defendant against all future state and federal claims from the approximately 255,000 class members.

The Parties offer essentially three arguments in support of their position. First, the Parties argue that the objections have already been ruled on. Second, the Parties argue that the Objector's claims are against the policy considerations of the FDCPA and Rule 23. Third, the Parties argue that they have "achieved a 100% victory" for the Plaintiffs, rendering the settlement unassailable. As discussed below, each of these arguments is unpersuasive.

Mr. Sejour's objections have not been ruled on previously. In fact, these are Mr. Sejour's first objections to the Parties' new proposed settlement and Mr. Sejour's prior objections were left undecided. Furthermore, the Parties' claim that a ruling in favor of Mr. Sejour would be counter to the purpose of the FDCPA and result in duplicative litigation is pure speculation, and similar arguments have been rejected by courts throughout the country. Finally, this settlement – which provides no benefit to any class member in exchange for waiving every right under any state and federal statute – is not a "100% victory." Indeed, the settlement's terms are so defective and the relief offered is so inconsequential that the proposed settlement cannot be maintained. Even the proposed *cy pres* recipient, the Legal Aid Society of New York, has recognized this, declined receipt of the funds, and objected to the settlement. *See* **Exhibit A** to accompanying Reply Declaration of Brian L. Bromberg dated August 9, 2013.

**Argument**

I. **The objector's claims have not been previously rejected.**

The Parties begin the argument section of their brief with the claim that Mr. Sejour's fairness objection was previously rejected at the fairness hearing, held on June 25, 2012. But Mr. Sejour's original set of objections resulted in the Court's rejection of the first settlement agreement, and Mr. Sejour now has a right to offer objections to this newly proposed settlement (which can be found at ECF# 73-2). Failing to do so might result in waiver.

In any case, the Court made no such ruling. The paragraph highlighted by the Parties in support of their position does not constitute a ruling. Instead, the Court was merely reciting the FDCPA's language that class-action damages are capped based on the net worth of the debt collector. Hearing Transcript (ECF # 47-2) at 16:19 – 17:8. Elsewhere, the Court raised significant concerns about terms of the agreement, specifically stating, "These class actions, many times most of the money goes to the counsel fees. This brings up the thought why was this action brought, for whose benefit. I will have a look into that as well." *Id.* at 32:16-32:19.

The Parties repeat this argument with respect to the breadth of the release, claiming that the Court's statement at the fairness hearing, that the Court did not see any problem with the scope of the release, forever foreclosed that issue from discussion. But again, this was not a ruling by the Court and, even if it were, it would not foreclose the Court's ability to consider the issue. Indeed, the Federal Rules grant the Court a wide berth empowering the judge to alter or amend any order made under Rule 23 (d)(1). Fed.R.Civ.P. 23(d)(2).

II. **This settlement was negotiated in the absence of any meaningful discovery.**

The Parties respond to concerns about the amount of discovery by arguing that they made a "strategic decision to settle" because the "small net worth of the defendant" limited class

2

damages under the FDCPA. ECF #93 at 19-20. But the net worth of the defendant pertains *only* to the FDCPA, and is irrelevant to the numerous additional claims under federal and state statutes that class members would be losing under the settlement. Had the Parties conducted additional discovery, the Plaintiff would likely have discovered evidence that some or all of the 255,000 class members had claims against R&R under statutes such as civil RICO, New York General Business Law § 349, and New York State Judiciary Law § 487. *See Diaz v. Portfolio Recovery Associates,* 2012 WL 1882976, at *4-5 (E.D.N.Y. May 24, 2012); *Sykes v. Mel S. Harris & Assoc. LLC*, 757 F. Supp. 2d 413, 428-29 (S.D.N.Y. 2010). The evidence resulting from meaningful discovery may have caused the Plaintiff to bring additional claims against the Defendant, narrow the class size, or abandon the settlement altogether.

### III. The settlement is substantively unfair because class members receive no recovery.

In response to the discussion on the reasonableness of the recovery, the Parties argue that the objector is attempting to clog the dockets of this court "with scores of class action lawsuits" that will drive up attorneys fees and waste judicial resources. ECF #93 at 6. But the Objector's only intention is to preserve class members' rights and prevent a settlement that offers them no benefit. The Parties' assertion is unsupported by any evidence. Courts have rejected speculations concerning the horrors of multiple class actions identical to the Parties' speculation here. *Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997); *Balogun v. Midland Credit Management*, Inc., 05-CV-1790, 2007 WL 2934886 (S.D. Ind. Oct. 5, 2007)(refusing to mandate a nationwide class because the interest in protecting consumers outweighs the interest of defendants that are subject to multiple class actions based on behavior that violates the FDCPA); *See Borcherding-Dittloff v. Transworld Systems, Inc.*, 185 F.R.D. 558 (W.D. Wis. March 2, 1999); *See Lewis v. ARS National Services, Inc.*, No. 09cv1041, 2011 WL 3903092 (M.D. Alabama Sept. 6, 2011).

The Parties go on to argue that the class will receive the maximum recovery and that the potential for an individual to recover up to $1,000 does not defeat the adequacy of the settlement. But the Parties' analysis addresses only half of the equation. In order to evaluate the settlement, the potential individual recovery must be compared to what class members will actually receive and what they give up. Here, class members receive nothing but give up everything – that is, any claim under state or federal law. In this situation, a number of courts have recognized that a *de minimis* recovery serves as grounds for denying class certification in FDCPA cases. *Fainbrun v. Southwest Credit Systems, L.P.*, 2008 WL 750550, *1 (E.D.N.Y. 2008); *Leyse v. Corporate Collection Servs., Inc.*, No. 03 Civ. 8491(DAB), 2006 WL 2708451, at *9 n. (S.D.N.Y. Sept. 18, 2006); *Jones v. CBE Group, Inc.*, 215 F.R.D. 558, 569-570 (D. Minn. 2002) ; *Granish v. Check Enforcement Unit, Inc.*, 209 F.R.D. 392, 393-94 (W.D. Mich. 2002).

While class members would not benefit from any recovery, the proposed settlement does provide for a $9,400 *cy pres* payment to the Legal Aid Society of New York. The Legal Aid Society recently submitted a letter to the Court stating that it would not accept a *cy pres* payment in connection with the proposed settlement because the settlement is unfair to class members. *See* **Exhibit A** to accompanying Reply Declaration of Brian L. Bromberg dated August 9, 2013.

### IV. The broad scope of the class release in this settlement is improper because the released claims were not adequately represented prior to settlement.

The Parties attempt to justify the settlement's excessively broad class release by arguing that the class release is "the usual release, all claims and damages." ECF #93 at 21. But the fairness of a class release is not measured by whether it is "usual" or unusual. Rather, a class release is only fair if the claims released in a proposed settlement "share the same integral facts as settled claims" and were "adequately represented prior to settlement." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106-107 (2d Cir. 2005). A named class representative cannot

4

represent class members whose claims they do not share, and, therefore, cannot release those class members from the unrepresented claims. *See National Super Spuds, Inc. v. New York Mercantile Exchange,* 660 F.2d 9, 17-18 (2d Cir. 1981).

The Parties argue that their releases must be acceptable because the *De La Paz* and *Tito* class settlements include identical releases. ECF #93 at 21. This argument misses the point. The class releases were fair in *De La Paz* and *Tito* because the released claims – including claims under the FDCPA and under New York State Judiciary Law § 487 – were adequately represented prior to settlement. Even though the settlement did not stipulate to liability on any claims other than the FDCPA, the other claims were asserted in the class action complaint and used as a bargaining tool in settlement negotiations to gain actual recovery for the class members. *De La Paz v. Rubin & Rothman, L.L.C.,* Case No. 11-CV-09625 (S.D.N.Y. 2011). Consequently, the *De La Paz* class members received up to $1,000 in monetary relief in exchange for releasing their claims against R&R. Had the settlement here been approved prior to settlement of the *De La Paz* and *Tito* class actions, the approximately 50,000 class members covered by *De La Paz* and *Tito* – like all of the approximately 255,000 class members here – would have been forced into equally broad releases with no compensation whatsoever.

The Parties respond to the Objector's argument that class members would be forced to give up valuable claims under statutes like civil RICO, New York General Business Law § 349, and New York State Judiciary Law § 487 by arguing that "this lawsuit does not make any allegations remotely akin to" the facts of cases like *Sykes*. ECF #93 at 21. Indeed, the class counsel did *not* make any allegations analogous to those in *Sykes*, because the class was constructed so broadly that it was impossible to effectively assert the civil RICO, New York General Business Law § 349, and New York State Judiciary Law § 487 claims that many of the

5

class members likely had. Even if the class doesn't have claims under these statutes, it is highly likely that *some* of the 255,000 class members or subclasses of the same have valuable claims under these statutes. Moreover, the Parties failed to engage in the meaningful discovery that would have brought these claims to light. The fact that the Plaintiff constructed an overbroad class and brought a weak case should not be a reason to deprive unrepresented class members of their valuable claims against R&R.

V.     **The proposed class notice is insufficient.**

The Parties argue that their class notice is sufficient because it refers class members to a website and phone number for more information. This argument has been explicitly rejected by the Second Circuit. *National Super Spuds, Inc.*, 660 F.2d 9. In *National Super Spuds*, as in this case, the class notice failed to mention that class members would be barred from asserting all claims against the defendants, whether or not they had been adjudicated in the class action, but invited class members to inspect a separate document, the Stipulation of Settlement. *Id.* at 14. The Second Circuit held the class notice to be insufficient because it failed to disclose that all future claims would be barred. *Id.* at 20-21.

The same is true here; the availability of a website and phone number to obtain more information does not remedy the fact that the proposed notice does not make clear what claims are waived. Specifically, the notice tells class members that, "by doing nothing, you will remain a member of the class and you will give up your right to sue Rubin and Rothman separately *about the claims raised in the lawsuit*." ECF # 73-4 at 2 (emphasis added). This description of the rights waived is incorrect. Class members not only waive their rights to sue R&R for claims raised in the lawsuit, but also waive their right to sue R&R based on any claim under any statute, including those not mentioned in the lawsuit. The existence of a website and phone number with

accurate information does not make up for the fact that the actual notice is inaccurate and misleading. Because the proposed notice misstates the rights waived by class members, it fails to "'fairly apprise the prospective members of the class of the terms of the proposed settlement'" and is insufficient to satisfy the "best notice practicable" requirement of Fed.R.Civ.P. 23(c)(2)(B). *See Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1989) (quoting *Grunin v. International House of Pancakes*, 513 F.2d 114, 122 (8th Cir. 1975)).

## VI. Class counsel is not an adequate representative of class interests.

The Parties urge the Court to gloss over Objector's concerns that Mr. Horn is inadequate to serve as class counsel, but the Court should closely scrutinize the class representation. "Because of the limited control exercisable by class members, class settlements are susceptible to abuse." *Plummer v. Chemical Bank*, 668 F.2d 654, 658 (2d Cir. 1982). In settlements negotiated before a class has been certified, it is especially likely that the interests of the lawyer and the class will diverge, resulting in a betrayal of the class members' interests. *Id.* at 657-658.

In defending his adequacy as class counsel, Mr. Horn lists the prior cases in which he has been approved to serve as class counsel. ECF #93-1 at 3-4. However, "competence of class counsel includes not only reputation built upon past practice, but also past performance in the present litigation." *Savino v. Computer Credit, Inc.*, 173 F.R.D. 346, 353 (E.D.N.Y. 1997), *aff'd*, 164 F.3d 81 (2d Cir. 1998). Here, Mr. Horn has failed to conduct meaningful discovery; constructed a notice which fails to apprise class members of their rights waived in the proposed settlement; and negotiated a settlement which would provide Mr. Horn with $125,000 in attorneys' fees while providing no recovery whatsoever to class members. Notwithstanding Mr. Horn's prior experience in class action lawsuits, his recent performance has demonstrated that he is inadequate to serve as class counsel in this case.

**VII.      Questions remain concerning Rubin & Rothman's net worth.**

In order to best understand the remaining issues surrounding R&R's net worth, it is helpful to review the timeline of when the various net worth amounts were offered and the source of these amounts. R&R first provided Mr. Horn with net worth information for this action on October 31, 2010. ECF #93-4 at 2. At that time, R&R gave Mr. Horn interim financial statements generated by R&R's in-house "accounting department." These financial statements were not reviewed by an outside agency and are the "lowest level" of financial statement. ECF #93-4 at 2. The unaudited internally generated financial statements showed that R&R had a net worth of approximately $940,000. It is not known whether Mr. Horn requested any higher-level financial information beyond these interim statements.

On June 25, 2012, this Court ordered R&R to submit net-worth information under seal. Around the same time, on July 5, 2012, R&R submitted net-worth information to the Plaintiff's in *De la Paz*. ECF #93-4 at 2. The financial statements submitted in *De La Paz* were created by the R&R's outside accountants, Berdon and Co., and reflected a net worth of $2,289,192 on December 31, 2011. ECF #93-4 at 2. Objector's attorneys do not know whether the net-worth information submitted to the Court was based on the lowest level interim financial statements or the more accurate number generated by R&R's outside accountants for *De La Paz*. Mr. Horn received financial data again in February 2013 when this action was settled for a second time. ECF #93 at 19. Mr. Horn does not state what financial information was submitted, however, it again showed R&R's net worth as $940,000. ECF #93 at 19.

On April 15, 2013, R&R reached a settlement agreement in *De La Paz v. Rubin and Rothman*; on May 2, 2013, R&R reached a settlement agreement in *Tito v. Rubin and Rothman*.

8

The settlement agreements and Memorandum in Support of Preliminary Approval of the Settlement reflect that R&R had a net worth of approximately $2.5 million based on certified financial records from December 31, 2010.

Finally, Keith Rothman stated in his affidavit, dated June 26, 2013, that "Now that the financials for 2012 have been completed and reviewed by our accountants, the net worth figure has been adjusted slightly to $976,875." Mr. Rothman does not make clear whether the term "our accountants" refers to R&R's outside accountants, the "certified public accounting firm" of Berdon & Co., who determined R&R's net worth was $2,289,192, or to R&R's in-house "accounting department," who determined that R&R's net worth was approximately $940,000. Mr. Rothman also does not state whether the $976,875 net-worth figure is based on interim financial statements or a higher-level financial statement. And while Mr. Rothman's statement that the net worth of companies is fluid is undoubtedly true, repeated fluctuations of more than two times the net worth followed by corresponding decreases in net worth over multiple years is unusual.

Because open questions remain concerning R&R's net worth, the Court should review the net-worth information submitted *in camera*, alongside the net-worth information submitted in *De La Paz* and *Tito*, to ensure that the net-worth amount that is the basis of the settlement is accurate.

### VIII. The Parties' accusations against Objector's attorney, Brian L. Bromberg, of vexatious conduct are neither relevant nor properly before the Court

Although there is no explicit request for sanctions in their opposition brief, the Parties accuse Mr. Bromberg of unreasonably vexatious conduct – the standard for sanctions under 28 U.S.C. §1927 – and for that reason, the Parties' claims concerning Mr. Bromberg's email will be briefly addressed.

9

The Parties' arguments are best refuted by the text of Mr. Bromberg's email (ECF# 93-1 at p. 48 of 150), which was intended to alert consumer law attorneys to the terms of the settlement, enabling them to advise their clients as to how to proceed. "To impose sanctions under either authority, a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, motivated by improper purposes such as harassment or delay." *Id*. at 396 (internal quotation marks omitted). Such bad faith extends to "actions that led to the lawsuit or in the conduct of the litigation," and sanctions are also appropriate "where the attorney has negligently or recklessly failed to perform his responsibilities as an officer of the court." *Wilder v. GL Bus Lines*, 258 F.3d 126, 130 (2d Cir.2001). Here, the conduct described by the Second Circuit did not occur, and the Parties' request should be denied.

## Conclusion

The settlement is procedurally and substantively unfair and inadequate. It was settled in the absence of any discovery and will wipe out the valuable claims of hundreds of thousands of class members arising from all manner of communication – not just the letters at issue – that R&R may have sent the class members in the last four years. Objector Patrick Sejour respectfully requests that the Court deny approval of this grossly unfair and inadequate settlement.

Dated: New York, New York
      August 9, 2013

                                        /s/ Matthew A. Schedler
                                        Matthew A. Schedler


                                        /s/ Brian L. Bromberg
                                        Brian L. Bromberg

## Certificate of Service

    I, Brian L. Bromberg, an attorney, hereby certify that on August 9, 2013, the foregoing documents were filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Eastern District of New York's Local Rules, and/or the Eastern District's Rules on Electronic Service upon the following parties and participants:

Joseph L Francoeur    joseph.francoeur@wilsonelser.com

Matthew Austin Schedler    matthewsc@camba.org

Thomas A. Leghorn    Thomas.Leghorn@wilsonelser.com, cori.rosen@wilsonelser.com

William Franklin Horn    bill@wfhlegal.com, court_filings@wfhlegal.com

Dated: New York, New York
       August 9, 2013

                                    /s/ Brian L. Bromberg
                                    Brian L. Bromberg